■ AMERICAN BANANA COMPANY, INC., Appellant, v VENEZOLANA INTERNACIONAL DE AVIACION S. A. (VIASA), Respondent.—Order, Supreme Court, New York County, entered July 26, 1978, granting summary judgment to defendant dismissing the complaint, reversed, on the law, with $75 costs and disbursements of this appeal payable to appellant, and defendant's

motion for summary judgment denied. It is conceded in this record that plaintiff, the consignee named in the air waybill on this international flight governed by the terms of the Warsaw Convention, had canceled its order for the goods being transported three days before the flight, because the carrier could not make timely delivery. The goods were delivered to another party, West Indies Food, on the instructions of the consignor. However, plaintiff's status as consignee was never changed on the waybill. Parenthetically, it ought to be noted that on the facts here it cannot be determined at this time whether the consignor elected to treat the cancellation as a rescission, properly made because of the delay, or as a breach of the contract. If the latter was the theory adopted by the consignor, it could resell the goods for the account of the named consignee (Uniform Commercial Code, § 2-706), and one who may be sued as a party defendant is surely a proper party plaintiff. It further appears that in a mistaken belief that only the designated consignee could sue the carrier, West Indies authorized plaintiff to bring suit. This is confirmed by affidavits in the record. In its complaint plaintiff has pleaded that it brings this action "on its own behalf and as agent and trustee on behalf of and for the interests of all parties who may be or become interested in the said shipment as their respective interests may ultimately appear." There is no danger that plaintiff will be unjustly enriched by any award for damages, or that the carrier will be making any liability payment to the wrong party, since plaintiff has brought this action, in part, as a trustee for the consignee who paid for the goods. Thus, by the nature of its claim, plaintiff has put itself in a position of accountability to those who were injured by the carrier. "Any form of assignment which purports to assign or transfer a chose in action confers upon the transferee such title or ownership as will enable him to sue upon it. This is true even though the assignment is for the purpose of suit only and the transferee is obligated to account for the proceeds of suit to his assignor." *(Titus v Wallick,* 306 US 282, 289; see, also, *Hill v Satra Corp.,* 65 AD2d 737.) An assignment does not have to be supported by consideration *(Park Place Cleaners v Essig,* 18 AD2d 896) and it may be made by an oral communication *(Schuttinger v Woodruff,* 233 App Div 272, 276). Any issue as to the *bona fides* of the assignment is preserved for resolution at a plenary trial by virtue of the eighth affirmative defense which asserts lack of standing to sue. It should be noted too, that the two-year time limitation in which to bring this action (Warsaw Convention, art 29; US Code, tit 49, § 1502) has run on West Indies. We hold, therefore, that in the circumstances plaintiff has standing to sue by virtue of its status as consignee of record and the assignment of the chose in action for the limited purpose of suit. Concur— Kupferman, J. P., Lane, Sandler and Sullivan, JJ.

Lupiano, J., dissents in a memorandum as follows: Plaintiff American Banana Company, Inc. (hereinafter American Banana) ordered a shipment of plantains from Veneagro in late April, 1975. On April 30, 1975, Veneagro, as shipper (consignor), entered into a charter agreement with defendant Venezolana Internacional de Aviacion S. A. (hereinafter VIASA) calling for the transportation of this shipment of plantains from Maiquetia, Venezuela to New York, New York. In connection therewith, an air waybill (No. 164-0558472) was issued by defendant VIASA, dated April 30, 1975, listing Veneagro, care of Servicargo, Maiquetia, Venezuela as shipper and plaintiff American Banana as consignee. The shipment was scheduled to be transported on May 1, 1975, but due to mechanical problems, VIASA was unable to transport same. After offloading the plantains, repairs were effectuated and the plane was ready to fly on May 4, 1975. Plaintiff, learning

of the delay, canceled its order with Veneagro that same day, May 1. Consequently, Veneagro (the consignor) arranged to have this shipment purchased by West Indies Food & Importing, Inc. (hereinafter West Indies) and instructed the defendant carrier VIASA to transport the plantains to the new consignee, West Indies. This instruction was first orally communicated to VIASA and then confirmed by telex to VIASA from Veneagro as follows: "we wish to reconfirm the conversation held with you by Mr. Albino Gomez, president of Veneagro C A on May 4, 1975 regarding the change of consignee of shipment with destination New York and covered by [air waybill] 164-0558472 in which it was indicated to him that the new consignee should be: West Indies Food and Importing Inc." Acting upon the consignor's instructions, VIASA's Caracas station telexed its offices at John F. Kennedy Airport in New York, advising that upon arrival of the shipment of plantains, West Indies was to be notified. However, no new air waybill was issued and the consignee named in Air Waybill No. 164-0558472 was not changed from American Banana to West Indies so as to reflect the change in consignee. Upon arrival of the plantains at John F. Kennedy Airport on May 4, 1975, the shipment was released by defendant VIASA to West Indies in accordance with the instructions received from the shipper Veneagro, and an indication was made on the air waybill that a problem existed concerning the condition of the shipment. Some 22 months later, plaintiff American Banana commenced this cargo damage action. After joinder of issue, defendant carrier VIASA moved for summary judgment dismissing the complaint on the ground that plaintiff American Banana has no standing to maintain this action. In paragraph 6 of the complaint, it is alleged that "Plaintiff was the consignee of the shipment herein, and was entitled to the delivery of said shipment in the same good order and condition as when shipped, and plaintiff brings this action on its own behalf and as agent and trustee on behalf of and for the interests of all parties who may be or become interested in the said shipment as their respective interests may ultimately appear." All parties agree—and it is quite clear—that this case is governed by the Warsaw Convention since it involves an international shipment of goods by air from Venezuela to the United States, both countries being signatories to the convention (US Code, tit 49, § 1502). Apart from Warsaw Convention consideration, plaintiff may not assert the instant action. "It is undoubtedly the general rule in this State that an action against a common carrier for the breach of his contract, or of his duty to carry must be brought in the name of the owner of the goods although the contract may have been made or the goods shipped by another. [citations] The rule has * * * some exceptions. [citations] Where the consignor, although not the general owner, has a lien upon or a special interest in the goods, and makes the contract and pays the consideration for their carriage, he may bring an action for the breach of the contract in his own name in order that he may protect his rights" (*Swift v Pacific Mail S. S. Co.*, 106 NY 206, 213). Thus, as a general proposition and without reflecting on the application of the provisions of the Warsaw Convention, plaintiff American Banana must demonstrate that it has an ownership interest or some other special interest in the goods in order to sustain its action against VIASA for injury to the goods. As it is presumed that the consignee of goods is the owner thereof, plaintiff, assuming it is the consignee, could maintain the action. "This is based upon the reasoning that by delivery of the goods to the carrier for transportation, the consignor presumably divests himself of all title to the goods, and therefore may not maintain an action for their loss or injury. However, such an action is properly maintainable by the

consignor where it is shown that he did not part with title to the goods upon delivery thereof to the carrier for transportation to the consignee. For example, where the consignor ships goods to the consignee for the latter's inspection and approval, the title thereto not to pass until there has been an acceptance of the goods by the consignee, the consignor and not the consignee is the proper party to bring an action against the carrier for their loss" (7 NY Jur, Carriers, § 259). Patently, plaintiff never had title to the goods and may not maintain this action on the basis of an ownership interest. Assuming plaintiff to be the consignee of the goods, the presumption that as such consignee, plaintiff has such ownership interest is rebuttable (Price v Powell, 3 NY 322, 325). Where the presumption is rebutted and it is shown that the consignee has no interest in the goods consigned, he cannot maintain an action against the carrier for their injury (7 NY Jur, Carriers, § 260). The mere fact that plaintiff is the consignee named in the air waybill, although it is not the actual consignee, that is, the party to whom the goods were delivered by the carrier at the direction of the consignor, may not serve to give plaintiff an ownership or special interest in the goods. This is so because the consignee of goods in the accepted usage of that term is a person other than the consignor to whom the consignor parts with the real control of the goods, that is, the one to whom the carrier may lawfully make delivery in accordance with its contract of carriage (see Great Northern Pacific S. S. Co. v Rainier Brewing Co., 255 F 762, 764; The Louisiana, 1918 AC 461, 471). Patently, plaintiff never had control of these goods (cf. Swift v Pacific Mail S. S. Co., supra, p 214). Under subdivision (6) of section 1-201 of the Uniform Commercial Code, an air waybill is embraceable within the definition of "Bill of lading." The air waybill involved in this action is nonnegotiable, that is, its terms dictate that the goods are consigned to a named person and are not to be delivered to bearer or to the order of a named person (Uniform Commercial Code, § 7-104). Beyond peradventure, the carrier can always follow the instructions of the consignor on a nonnegotiable air waybill (Uniform Commercial Code, § 7-303). Thus, VIASA was entitled to dispose of the goods on instructions from Veneagro, the consignor, even withstanding any contrary instructions from the consignee named in the air waybill (Uniform Commercial Code, § 7-303, subd [1], par [b]). The consignee's instructions can be followed by the carrier only if the consignee is entitled to dispose of the goods as against the consignor (Uniform Commercial Code, § 7-303, subd [1], par [d]) or if there are no contrary instructions from the consignor and either the goods are at destination or the consignee has possession of the nonnegotiable bill (Uniform Commercial Code, § 7-303, subd [1], par [c]). As plaintiff has no proprietary interest in the goods and never was entitled to control of the goods, and as the carrier VIASA obtained instructions from the consignor to deliver the goods to a person other than that stated in the air waybill, defendant VIASA is entitled to dismissal of the plaintiff's complaint under section 7-303 of the Uniform Commercial Code. Our inquiry is now directed to the issue of whether the Warsaw Convention requires a different result. "Under the Warsaw Convention, the right to bring suit for the * * * damage to, goods transported between two countries subject to its provisions is in the consignor or the consignee" (7 NY Jur, Carriers, § 259). No definition of consignee is set forth in the articles of the Warsaw Convention. Indeed, article 12 of the convention relevant on the issue of control, specifically states in pertinent part: "(1) Subject to his liability to carry out all his obligations under the contract of transportation, the consignor shall have the right to dispose of the goods by withdrawing them at the airport of

departure or *destination,* or by \* \* \* calling for them to be delivered at the place of *destination* \* \* \* to a person *other than the consignee named in the air waybill* \* \* \* He must not exercise this right of disposition in such a way as to prejudice the carrier or other consignors, and he must repay any expenses occasioned by the exercise of this right" (emphasis supplied). Accordingly, the consignor under the Warsaw Convention retains control of the delivery of the goods, even when they arrive at the place of destination up until the time the consignee on arrival of the goods at the place of destination requires the carrier to hand the goods over to him (the consignee). It is specifically provided that the consignor's right of control ceases at the moment when that of the consignee begins and that the consignee's right of control commences when the goods arrive at the place of destination and the consignor has not theretofore disposed of the goods by withdrawing them or directing delivery to a person not named in the air waybill, whether in the course of the journey or at the place of destination (art 12, §§ [1], [4]; art 13, § [1]). These provisions can be varied only by express provision in the air waybill, and as the air waybill herein does not vary these provisions, they apply to the circumstances of this appeal (art 15, § [2]). Since it is not disputed that the consignor exercised its right to dispose of the goods by calling for them to be delivered at the place of destination to a person other than the consignee named in the air waybill, the consignee named in the air waybill never obtained an enforceable right under the convention. Also of import is the provision of the Warsaw Convention which requires that in case of damage to goods, *"the person entitled to delivery must complain to the carrier* forthwith after the discovery of the damage" (art 26, § [2]) (emphasis supplied). This provision clearly contemplates that the real party in interest is the actual consignee, that is, the one to whom the goods are delivered, because it is this party which obtains control over the goods. Clearly, American Banana, albeit it was the named consignee in the air waybill, was never under the uncontroverted circumstances entitled to delivery, and, accordingly, was not subjected to the mandate of section (2) of article 26. In the absence of a definition of consignee in the articles of the Warsaw Convention, that term may be used in its ordinary commercial and legal signification as set forth above. Since the convention contemplates that the goods may be disposed of by the consignor by delivery to a person other than the consignee named in the air waybill, it recognizes that the real consignee may be one other than the consignee so named, that is, that the actual consignee is the one to whom the goods were delivered, the one to whom the consignor relinquished control over the goods. Article 14 which provides that "The consignor and the consignee can respectively enforce all the rights given them by articles 12 and 13, each in his own name, whether he is acting in his own interest, or in the interest of another, provided that he carries out the obligations imposed by the contract" does not restrict itself to the "consignee named in the air waybill," but contemplates the generic use of the term consignee. Both section 1 of article 13 and article 14 condition the enforcement of rights under the convention on the carrying out of the obligations imposed by the contract of transportation, the payment of the charges due and compliance with the conditions of transportation set out in the air waybill. Plaintiff American Banana, although named as consignee in the air waybill, was replaced as consignee at the direction of the consignor and had no obligations with respect to the payment of charges due and compliance with the conditions of transportation set forth in the air waybill. *Pilgrims Apparel v National Union Fire Ins. Co.* (6 Aviation Cases 17,733); *Holzer Watch Co. v Seaboard & Western Airlines* (5 Aviation Cases

17, 854, NYLJ, Nov. 4, 1957, p 6, col 6) and *Manhattan Novelty Corp. v Seaboard & Western Airlines* (5 Aviation Cases 17,229, NYLJ, Jan. 25, 1957, p 6, col 7) relied on by plaintiff *American Banana* are inapposite. Each case (under the Warsaw Convention) involved the delivery by the carrier of the goods to the consignee which also happens to be the consignee named in the air waybill because no contrary instructions were received by the carrier from the consignor, that is, the consignee named in the air waybill was the actual consignee, the one to whom the consignor intended to relinquish control over the goods. In a suit by a third party, that is, by one other than the consignor or the consignee against the carrier even when such third party claimed the proprietary interest in the goods, it was held that the carrier could be subject to suit only by those with whom it *knowingly* dealt, which in those cases embraced the consignor and the consignee named in the air waybill. In this case, the carrier VIASA knowingly dealt with West Indies Food & Importing, Inc., because it was the party to whom the carrier was to make delivery pursuant to instructions from the consignor. To put it in other terms, West Indies, insofar as the carrier was concerned, was the consignee entitled to delivery of the goods and the party with whom the carrier knowingly dealt, such knowledge being imparted by virtue of the instructions received from the consignor. Finally, as plaintiff American Banana canceled its order with Veneagro for the plantains, it had no privity of contract with the latter for the purchase of these goods, and as it was not the consignee of the shipment of those plantains—albeit it was the original consignee named in the air waybill—it had no privity of contract respecting the air transportation of that shipment and no special interest in the goods by virtue of the mere fact that it was the named consignee in the air waybill—albeit it was not the real consignee entitled to delivery. Hence it is not entitled to sue the carrier for damage to those goods (CPLR 1004). The complaint served by American Banana *clearly* sets forth the fact that it is suing as consignee of the shipment entitled to delivery of that shipment. Plaintiff *never* amended or sought to amend the complaint to allege its status as an assignee of West Indies. Indeed, it is significant that plaintiff's cross motion to defendant VIASA's motion for summary judgment contains a request for leave to amend to include West Indies, the actual consignee, as a party plaintiff. The affidavit of West Indies' president in support of plaintiff American Banana's motion to add West Indies as a party plaintiff clearly demonstrates that West Indies never intended to divest itself of its interest as consignee. West Indies' president states that he instructed his attorneys to commence suit against VIASA, but, operating under the misapprehension that it could not sue because it was not so named in the air waybill, West Indies attempted "to obtain from American Banana Company *authorization to sue in its name,* on behalf of West Indies." The general manager of plaintiff in an affidavit corroborates this statement, asserting that the president of West Indies "appraoched me * * * and requested that I authorize suit to be commenced against VIASA on behalf of West Indies, and Veneagro, but in the name of AMERICAN BANANA COMPANY." While assignment of a chose in action may be by parol, it is clear that "An assignment contemplates a completed transfer of the entire interest of the assignor in the particular subject of assignment, whereby the assignor is divested of all control over the thing assigned" (3 NY Jur, Assignments, § 28). As plaintiff American Banana is not the consignee, it cannot under the Warsaw Convention maintain an action against VIASA, the carrier, in its own name, regardless of whether it is acting in its own interest or in the interest of another. Only by virtue of an assignment from

the consignee can it stand in the shoes of the consignee for purposes of standing to sue. All that appears from the affidavits of West Indies' president and the general manager of American Banana is that the consignee, West Indies, merely requested authorization from plaintiff American Banana for suit in American Banana's name. Assuming plaintiff is *alleging* standing as an assignee, under these circumstances there is nothing which would relieve the defendant carrier from liability in an action brought by West Indies, the consignee, against the carrier for the same claim (see *Awner v Moscowitz,* 176 NY Supp 737). "CPA § 210 providing that an action must be maintained by the 'real party in interest' has been omitted under the CPLR. It is not to be concluded, however, that the rule has been eliminated. As the revisers indicate, the rule is really one of substantive law, and in the interest of final adjudication an action must be maintained by the real party in interest whether the practice act says so or not. 1st Report, Leg.Doc.1957 No. 6(b), p. 33. In order to insure that the defendant will not be sued twice on the same claim and to guarantee him the right to interpose all defenses he has against the claim, the action must be maintained by the party who has legal title to the claim. That person we call the real party in interest. Sheridan v. Mayor, 1876, 68 N.Y. 30" (McLaughlin, Practice Commentaries, McKinney's Cons. Laws of NY, Book 7B, CPLR 501-1005, p 351). The rule adopted in courts of equity, " 'That he who has the right is the person to pursue the remedy' " was made general, not to create "a new cause of action where none previously existed, but to permit and require the beneficial owner to enforce his rights in his own name. The real party in interest has been defined . . . ' If, as between the assignor and assignee, the transfer is complete, so that the former is divested of all control and right to the cause of action, and the latter is entitled to control it and receive its fruits, the assignee is the real party in interest.' *(Cummings v. Morris,* 25 N.Y. 625.) In other words, the plaintiff must have some title, legal or equitable, to the thing assigned. *(Hays v. Hathorn,* 74 N.Y. 486.) If the assignee have such title it is enough. The consideration paid, the purpose of the assignment, the use to be made of any proceeds collected is immaterial. *(Allen v. Brown,* 44 N.Y. 228 * * *)* But legal title or equitable interest he must have" *(Spencer v Standard Chems. and Metals Corp.,* 237 NY 479, 480-481). The fact that both American Banana and West Indies contemplate joinder of West Indies as party plaintiff demonstrates that West Indies never assigned the chose in action, which is the subject of this lawsuit, to American Banana, but that both allegedly operated under the mistake of law that the claim which West Indies and not American Banana possessed, could be asserted only by American Banana. Nowhere *in the record* do any of the parties aver or urge that West Indies assigned its claim as consignee to American Banana. The mere request by West Indies for authorization from American Banana for suit against defendant VIASA in American Banana's name on behalf of West Indies does not serve to give American Banana legal title or an equitable interest in the claim. In connection with this, it is noted that the proposed amended complaint which adds West Indies as a party plaintiff contains the allegation: "6. Plaintiff American Banana or plaintiff West Indies was the consignee of the shipment herein, and was entitled to the delivery of said shipment". We are confronted on this record with sophisticated businessmen who at all times have obtained the benefit and guidance of legal counsel. Under these circumstances, the absence of any allegation in the complaint or proposed amended complaint of any assignment by West Indies of its claim to plaintiff, the studious avoidance of reference to any assignment in the

affidavits or in the arguments advanced at Special Term or before this court on the instant appeal is most significant and, in view of the aforesaid, most compelling. Beyond cavil, the nature of the misapprehension of law which imbued the actions of West Indies and plaintiff in this matter, itself, demonstrates the absence of an assignment. The proposed amended complaint (par 6) demonstrates the inability of plaintiff and West Indies to determine for themselves who was the consignee entitled to sue. Under these conditions, prudence dictated that both sue for their alleged respective interests and this is what is now being attempted. That attempt eloquently illustrates the reality that it never was intended by West Indies to assign its claim to American Banana. In responding to plaintiff's assertion of West Indies' effort to obtain authorization from plaintiff for suit in plaintiff's name on its own behalf, counsel for defendant VIASA in an affidavit states the following: "The affidavits submitted by plaintiff are replete with self-serving statements to the effect that Veneagro and West Indies requested American Banana to commence suit for them. If Veneagro intended to seek recovery from VIASA, why didn't they commence suit themselves? Likewise, if West Indies was perplexed as to what name to commence suit in, why didn't they bring suit in their own name and that of American Banana? The answer to these questions is obvious. American Banana never considered the problem it is presently faced with until now and did not obtain permission until recently. It is interesting to note that American Banana does not allege or furnish any proof of any assignment of West Indies' claim against VIASA to it. Obviously, this was never done. American Banana cannot acquire such rights simply by asking. Some legitimate legal transfer of West Indies' and/or Veneagro's rights must have occurred. Such is not the case in this instance." These perceptive comments by defense counsel are unanswered on this record. Patently, "Any language, however informal, if it shows the intention of the owner of a * * * chose in action * * * to transfer it so that it will be the property of the transferee, will amount to an equitable assignment, if supported by sufficient consideration, and if the thing assigned is sufficiently identifiable" (3 NY Jur, Assignments, § 30). The absence of consideration on this record renders consideration of whether an *equitable* assignment is involved, futile. If the assignee has title to the chose in action, the debtor or obligor cannot object to a lack of consideration *(Matter of Holden,* 271 NY 212, 217). Further, although an assignment at law of a chose in action may be made orally "to constitute such an assignment, it must be shown that the owner surrendered all control over it, and had made an absolute appropriation of it" *(Rupp v Blanchard,* 34 Barb 627, 629; 3 NY Jur, Assignments, § 36). With respect to the form of an assignment, it is well recognized that any language will be sufficient to vest the property in the assignee, provided it shows the clear manifest intent of the owner of the chose in action *to transfer it* (3 NY Jur, Assignments, § 28). No such language expressive of this requisite intent is presented on this record. "While no special form of words is necessary to effect an assignment it is requisite that there be a perfected transaction between the parties, intended to vest in the assignee a present right in the things assigned. An assignment at law contemplates a completed transfer of the entire interest of the assignor in the particular subject of the assignment, whereby the assignor is divested of all control over the thing assigned" *(Coastal Commercial Corp. v Kosoff & Sons,* 10 AD2d 372, 376). The proof submitted on this record, examined in light of the afore-mentioned rules, was legally insufficient to constitute an assignment. In essence, American Banana and West Indies never realized that an assignment would have to be made to afford

standing to American Banana in this action, and, in the absence of such knowledge, did not contemplate such assignment. Hence, it was not made. The majority of this court choose to ignore this reality. To reiterate, the complaint most conspicuously fails to mention West Indies and its interest and the purported attempt by American Banana to assert rights of a consignee under article 14 of the Warsaw Convention to sue in its own name in the interest of another is without foundation or legal justification. Accordingly, the order of the Supreme Court, New York County, entered July 26, 1978, granting defendant VIASA's motion for summary judgment dismissing the complaint, should be affirmed.