**Mary C. JOHNSON; John Laffey; Joan Laffey Baker; Bernard Laffey,** Plaintiffs–Appellants,

v.

**AMERICAN AIRLINES, INC., a Delaware corporation; Aer Lingus, an Irish corporation, and Does I through 25, inclusive,** Defendants–Appellees.

No. 86–2802.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 13, 1987.

Order and Opinion Filed Dec. 17, 1987.

Ronald H. Wecht, San Francisco, Cal., for plaintiffs-appellants.

David A. Senior, Los Angeles, Cal., and Robert G. Harrison, San Francisco, Cal., for defendants-appellees.

Before SKOPIL, FARRIS and O'SCANNLAIN, Circuit Judges.

## ORDER

The petition for rehearing is denied. The majority opinion and Judge Skopil's special concurrence and dissent filed October 9, 1987, 829 F.2d 925, is withdrawn.

## OPINION

FARRIS, Circuit Judge:

### BACKGROUND

The children and next of kin of Bridgette Laffey brought this action against American Airlines and Aer Lingus. After Mrs. Laffey died, the plaintiffs arranged for a California funeral home to ship Mrs. Laffey's remains to a funeral home in Shannon, Ireland. On June 7, 1985, the California funeral home delivered the remains in a sealed casket to American Airlines. The names of the respective funeral homes, not those of any of the plaintiffs, appeared on the air waybill.

American Airlines transported the casket to New York, and Aer Lingus transported the casket from there to Shannon, Ireland. Two of the plaintiffs inspected the casket when it arrived at the Shannon Airport. They alleged that the casket's seal had been broken, that the remains were damaged, and that items of personal property were missing from the casket, including gold framed glasses, rosary beads, mass

cards, a registry book, and the casket overlay.

Plaintiffs filed suit in California state court against American Airlines and Aer Lingus, seeking damages for negligent infliction of emotional distress and loss of property. Aer Lingus removed the case to federal district court under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1441(d). The district court granted summary judgment to the airlines, holding that various provisions of the Warsaw Convention [1] prevented the plaintiffs from pursuing their state-law claims. We affirm.

## STANDARD OF REVIEW

We review *de novo* a grant of summary judgment. *Investment Co. Inst. v. Clarke*, 793 F.2d 220, 221 n. 1 (9th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 422, 93 L.Ed.2d 372 (1986). We must determine whether the trial court correctly found that there were no genuine issues of material fact and correctly applied relevant law. *Ashton v. Cory*, 780 F.2d 816, 818 (9th Cir.1986).

## DISCUSSION

■ State-law claims allowing damages for injuries to goods in international air transportation can only be maintained subject to the conditions and limits outlined in the Warsaw Convention. Art. 24(1); *In re Mexico City Aircrash*, 708 F.2d 400, 414 n. 25 (9th Cir.1983). Plaintiffs concede this point, but argue that the Convention does not apply to the case because (1) human remains are not "goods" and (2) the airlines engaged in wilful misconduct and therefore are not protected by the Convention.

### 1. Are human remains "goods" under the Warsaw Convention?

■ No case has squarely addressed the issue whether human remains are "goods" for purposes of the Convention.[2] Article 1 of the Convention provides that the Convention applies "to *all* international air transportation of passengers, baggage, and goods performed by aircraft for hire" (emphasis added). We interpret this to mean that the Convention applies to *all* cases in which an aircraft is hired to transport someone or something on an international route. To interpret the Convention in any other way would leave airlines unprotected by the Convention when they are hired to transport things that are not readily viewed as "passengers," "baggage", or "goods." The signatories to the Convention could not have intended such a result. Accordingly, because American Airlines and Aer Lingus were hired to transport Mrs. Laffey's remains from the United States to Ireland, and because the remains cannot be categorized as "passengers" or "baggage," we conclude that they must be treated as "goods" for purposes of the Convention.[3]

Our decision is compelled as much by notions of fairness as it is by our interpretation of the Convention. The air waybill, which contained the terms of the contract, labelled the remains as "goods." The air waybill also warned that any recovery for injuries to the goods would be limited by the Convention unless the shipper opted to pay a higher shipping fee. The funeral home did not opt for additional coverage, but instead took advantage of the cheaper shipping rates. Only if the funeral home

1. Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929. 49 Stat. 3000 (1934), T.S. No. 876, 137 L.N.T.S. 11 *reprinted in* 49 U.S.C. § 1502 note (1982).

2. Dictum in *Tarar v. Pakistan Int'l Airlines*, 554 F.Supp. 471, 478 (S.D.Tex.1982), stated that human remains were not "goods" for purposes of the Convention. *Id.* The court, however, noted only that both parties agreed that human remains were not "goods." The court agreed with the parties without explaining why it did so. Moreover, whether or not the court agreed with

the parties had no bearing on the ultimate resolution of the case. Under these circumstances, *Tarar*'s value as precedent is limited, and we decline to rely on it.

3. We do not stand alone in classifying human remains as "goods." A number of cases arising from domestic flights have reached the same result. *See, e.g., Blair v. Delta Air Lines Inc.*, 344 F.Supp. 360, 365 (S.D.Fla.1972), *aff'd*, 477 F.2d 564 (5th Cir.1973) (per curiam); *Milhizer v. Riddle Airlines, Inc.*, 185 F.Supp. 110, 113 (E.D. Mich.1960), *aff'd*, 289 F.2d 933 (6th Cir.1961).

had opted to declare an excess value for the remains could the plaintiffs expect to have the shipment treated as other than "goods."

## 2. Wilful Misconduct

If, as we hold, the Convention applies to this shipment, plaintiffs seek to avoid the application of the Convention by arguing that "wilful misconduct" by the defendant airlines forfeited their right to seek protection under the Convention. See Art. 25(1) (a "carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability, if the damage is caused by his wilful misconduct.")

The district court ruled that plaintiffs' complaint failed to allege sufficient facts to support a claim based on wilful misconduct. The court gave the plaintiffs no opportunity to amend, which plaintiffs contend was an abuse of discretion. Wilful misconduct under the Convention means " 'the intentional performance of an act with knowledge that the ... act will probably result in injury or damage' or 'the intentional performance of an act in such a manner as to imply reckless disregard of the probable consequences.' " Republic National Bank of New York v. Eastern Airlines, Inc., 815 F.2d 232, 238–39 (2d Cir.1987) (quoting Pekelis v. Transcontinental & Western Air, 187 F.2d 122, 124 (2d Cir.), cert. denied, 341 U.S. 951, 71 S.Ct. 1020, 341 U.S. 951 (1951)); Butler v. Aeromexico, 774 F.2d 429, 430 (11th Cir.1985).

Plaintiffs contend that wilful misconduct by the airlines was the only and obvious inference from the facts alleged in their complaint. The complaint alleged that when the casket left San Francisco, it was sealed and its contents were intact. When it arrived in Ireland, it had been slit open and personal property inside was missing. Plaintiffs would invoke the doctrine of res ipsa loquitur to support their contention that these allegations create an inference of an intentional act committed while the casket was in the airlines' control. The doctrine of res ipsa loquitur provides a means of establishing negligence from certain facts. See Ashland v. Ling–Temco–Vought, Inc., 711 F.2d 1431,

1437 (9th Cir.1983). We refuse, upon the showing made, to extend the doctrine to prove an intentional tort.

To state a claim for an intentional tort such as wilful misconduct, plaintiffs would have had to plead facts showing that acts of the airlines or their agents proximately caused the damage to the casket. See Perera Co., Inc. v. Varig Brazilian Airlines, Inc., 775 F.2d 21, 23 (2d Cir.1985); Wing Hang Bank, Ltd. v. Japan Airlines Co., Ltd., 357 F.Supp. 94, 97 (S.D.N.Y.1973) (holding that robbers, not the airline, were the proximate cause of loss). Although the plaintiffs are almost certainly correct that only an intentional act could have caused the alleged damage to the casket, they allege no facts to show that any intentional act by the airlines was the proximate cause of the damage.

The plaintiffs pleaded negligence rather than wilful misconduct in their original complaint. In addition to ruling that plaintiffs' allegations failed to state a claim for "wilful misconduct," the district court denied leave to amend the complaint. Although we review a denial of leave to amend a pleading for abuse of discretion, we require courts to be generous in permitting amendment. Klamath Lake Pharmaceutical Assoc. v. Klamath Medical Serv. Bureau, 701 F.2d 1276, 1292 (9th Cir.), cert. denied, 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 96 (1983). But courts have discretion to deny leave to amend a complaint for "futility," id. at 1293, and futility includes the inevitability of a claim's defeat on summary judgment. Gabrielson v. Montgomery Ward & Co., 785 F.2d 762, 766 (9th Cir.1986). Amending the plaintiffs' complaint would have been futile, because their theory of "wilful misconduct" relied fatally on an inference of intentionality which is insufficient to state a claim. There was no abuse of discretion.

## 3. Standing

Because the airlines are entitled to protection under the Convention, the plaintiffs' claims can only be brought subject to the conditions and limits in the Convention. Art. 24(1). One of those conditions is that only the consignor and consignee to the air waybill have standing to

sue under the Convention. Art. 30(3); *American Banana Co. v. Venezolana Internacionel de Aviacion S.A.*, 67 A.D.2d 613, 411 N.Y.S.2d 889 (N.Y.App.Div.1979), *aff'd*, 49 N.Y.2d 848, 427 N.Y.S.2d 789, 404 N.E.2d 1330 (1980). Under the record before us the respective funeral homes, and not the plaintiffs, are the only entities allowed to sue the airlines. We do not reach the question of whether the plaintiffs in an action based on alleged contractual rights derived from the consignor or consignee, or on an agency or third-party beneficiary status, would have standing to bring this suit. We hold only that plaintiffs have made no allegations that would allow them to have standing to pursue their claims.

AFFIRMED.