972 F.2d 1338
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
CONFECCOES TEXTEIS DE VOUZELA, LDA.;
Montezela-Metalomecanica E Fundicao, LDA.,
Plaintiffs-Appellants,
v.
SPACE TECH SYSTEMS INC., Defendant,
and
David K. Lindemuth Co., Inc.; Dean C. Swett, et al.,
Defendants-Appellees.
 No. 91-35047.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 8, 1992.*
Decided July 22, 1992.
 
 Before ALARCON, RYMER and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Confeccoes Texteis de Vouzela, Lda. ("CTV") appeals the district court's summary judgment in favor of defendant David K. Lindemuth Co. We have jurisdiction over this diversity action pursuant to 28 U.S.C. § 1291, and we affirm.
 
 
 3
 * In granting summary judgment in favor of Lindemuth, the district court first held that the Warsaw Convention applies to this case. Second, the court held that Lindemuth is an "indirect air carrier," and thus is entitled to the protection afforded by the Convention. Third, the district court held that CTV's failure to complain to either SAS or Lindemuth within the time period established by the Convention's notice provision bars any action against Lindemuth for damages under the Convention.
 
 
 4
 Finally, the court concluded that, because the Convention applies to the transaction at issue, state law claims could only be maintained subject to the conditions and limits outlined in the Convention. Thus, CTV could not maintain state common law claims for negligence and fraud against Lindemuth because an action for damages against a carrier was barred by the Convention. The court acknowledged, however, that even if the Convention applies, Lindemuth could not avail itself of the Convention's protections if Lindemuth's actions fell within the Convention's "willful misconduct" exception. The court then granted summary judgment in favor of Lindemuth because CTV failed to establish any facts sufficient to show there is any genuine issue of material fact concerning any willful conduct by Lindemuth.
 
 
 5
 We review the district court's grant of summary judgment de novo. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937 (1990). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 II
 
 6
 CTV first argues that the district court erred in concluding that Lindemuth is an indirect air carrier. CTV's argument is unpersuasive.[1]
 
 
 7
 Both parties agree that the district court correctly identified the factors which are to be considered when determining whether an air freight forwarder, such as Lindemuth, is also an indirect air carrier:
 
 
 8
 [T]he way the party's obligation is expressed in documents pertaining to the agreement, ... the history of dealings between the parties[,] ... [and] how the party made its profit, in particular, ... whether the party "picked up the less-than-carload shipment at the shipper's place of business and engaged to deliver it safely at its ultimate destination ... [charging] a rate covering the entire transportation and [making] its profit by consolidating the shipment with others" ...[,] while the shipper "seldom if ever knew which carrier would be utilized in the carriage of his shipment"....
 
 
 9
 Royal Ins. v. Amerford Air Cargo, 654 F.Supp. 679, 682 (S.D.N.Y.1987) (quoting Zima Corp. v. M.V. Roman Pazinski, 493 F.Supp. 268, 273 (S.D.N.Y.1980)).
 
 
 10
 CTV argues, however, that the district court's application of these factors to the specific facts of this case is flawed, and that a proper application of these factors demonstrates that Lindemuth is merely a freight forwarder and an agent for the shipper. Notwithstanding CTV's arguments to the contrary, the district court's analysis is correct.
 
 
 11
 The terms of the Air Waybill expressly provide that Lindemuth is a carrier entitled to coverage under the Convention. Section 2(a) of the "Notice Concerning Carriers' Limitation of Liability," printed on the back of the Air Waybill, provides that: "Carriage hereunder is subject to the rules relating to liability established by the Warsaw Convention unless such carriage is not 'international carriage' as defined by that convention." Section 1 of the Notice states that the term "carrier," as used in the Air Waybill, means "all carriers that carry or undertake to carry the goods hereunder or perform any other services incidental to such air carriage." (Emphasis added). Because Lindemuth completed the Air Waybill and helped arrange for the transportation and insurance of the goods, Lindemuth falls within the category of those who "perform any other services incidental to such air carriage." Accordingly, Lindemuth is, by the terms of the Air Waybill and the Notice, a carrier.
 
 
 12
 CTV, however, argues that the terms of the Air Waybill do not establish that Lindemuth is an indirect air carrier. CTV first notes that Dean Swett, the general manager of Lindemuth, signed the Air Waybill as the agent of Space Tech, not as an indirect air carrier. While Swett did indeed sign his name as agent for Space Tech, that does not vitiate the conclusion that Lindemuth is an indirect air carrier. The role of Lindemuth as a freight forwarder/carrier is to arrange for the transportation of goods, and such arrangements include preparing the Air Waybill. Therefore, the fact that Swett signed the Air Waybill on behalf of Space Tech merely indicates that Swett and Lindemuth were doing their job--preparing documents and authorizing the shipment. It does not indicate that Lindemuth was in any sense abandoning its contractually defined role as a carrier.[2]
 
 
 13
 CTV next contends that, contrary to the district court's conclusion, the terms of the Air Waybill are ambiguous. This argument is unconvincing because the terms of the Notice unambiguously state that a "carrier" includes an entity that performs services incidental to air carriage. The tasks performed by Lindemuth were incidental to air carriage by SAS. Thus, the language of the Notice unambiguously encompasses Lindemuth.
 
 
 14
 Finally, CTV argues that the language of the Air Waybill is analogous to the language involved in J.C. Penney Co. v. American Express Co., 102 F.Supp. 742 (S.D.N.Y.1951), aff'd, 201 F.2d 846 (2d Cir.1953), and that, under the rationale of J.C. Penney, Lindemuth is merely an agent of Space Tech, not an indirect air carrier. In J.C. Penney, the court was faced with the question of whether Express Company was a freight forwarder or a carrier. Because Express Company's bill of lading specifically stated that its role was "to act as shipping agent for the Shipper," the court concluded that Express Company was a mere forwarder. See id. at 747.
 
 
 15
 J.C. Penney is factually distinguishable from the case at bar. In this case, the Air Waybill of Lading defined Lindemuth as a carrier, not as an agent of the shipper. Neither the terms of the Air Waybill nor the terms of the Notice limited Lindemuth's role to that of a shipping agent.
 
 
 16
 The final factor considered by the district court is how the forwarder made its profit. The court held that, even though Lindemuth did not engage in all the activities associated with an indirect air carrier, it still performed enough services associated with an indirect air carrier to be deemed an indirect carrier, not just a forwarder. The district court's analysis is correct.
 
 
 17
 Lindemuth's functions are to select an air carrier, prepare an acceptable air waybill, secure cargo space, and secure insurance. Space Tech contracted with Lindemuth to obtain most of these services. Additionally, Lindemuth paid for the cost of air transportation and insurance for the Space Tech shipment. Lindemuth, however, did not pick up the goods, hold the goods, or deliver them to SAS for shipment. Rather, it merely completed the Air Waybill and then directed Nymark, the president of Space Tech, actually to deliver the goods to SAS. Lindemuth, therefore, performed only some of the duties associated with an indirect carrier. We agree with the district court, however, that Lindemuth performed sufficient services to come within the definition of an indirect air carrier.
 
 
 18
 In sum, Lindemuth was deemed a carrier in the Air Waybill, Lindemuth performed at least some functions associated with an indirect carrier, and it charged a rate covering the entire transportation. When taken as a whole, these undisputed facts support the district court's conclusion that defining Lindemuth as an indirect air carrier not only comports with the reality of Lindemuth's role, but also furthers "the Convention's purposes of providing uniform worldwide liability rules and definite limits to the carriers' obligations." Julius Young Jewelry Mfg. Co. v. Delta Air Lines, 67 A.D.2d 148, 151, 414 N.Y.S.2d 528, 530 (1979).
 
 III
 
 19
 CTV next argues that because Lindemuth was merely acting as an agent for the shipper Space Tech, and not as a carrier, it is liable for its own negligence. CTV also contends that Lindemuth participated with Space Tech in committing fraud against CTV. Because, asserts CTV, issues of material fact exist with regard to the questions of whether Lindemuth acted negligently or fraudulently, summary judgment was improper. We disagree.
 
 
 20
 In transactions to which the Convention applies, state law claims "can only be maintained subject to the conditions and limits outlined in the Warsaw Convention." Johnson v. American Airlines, Inc., 834 F.2d 721, 723 (9th Cir.1987). Therefore, because Lindemuth is an indirect air carrier, and thus subject to the terms of the Convention, CTV's claims for damages can only be maintained if CTV complied with the notice requirements of the Convention.
 
 
 21
 The district court, however, found that because CTV did not comply with the Convention's notice requirements, its action was barred. On appeal, CTV does not challenge the district court's finding pertaining to the notice requirement. CTV, therefore, cannot maintain its negligence and fraud actions because it admittedly failed to comply with the Convention's notice requirement.[3]
 
 
 22
 CTV also argues that, even if the Convention applies, Lindemuth is not entitled to its protection because Lindemuth engaged in willful misconduct. See Warsaw Convention, Art. 25(1) (A "carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability, if the damage is caused by his willful misconduct."). The district court, however, properly addressed and rejected this argument.
 
 
 23
 We have defined "willful misconduct" as " 'the intentional performance of an act with knowledge that the ... act will probably result in injury or damage' or 'the intentional performance of an act in such a manner as to imply reckless disregard of the probable consequences.' " Johnson, 834 F.2d at 724 (citation omitted). Additionally, to demonstrate willful misconduct, CTV would have to show that Lindemuth's acts proximately caused the damage to CTV. See id.
 
 
 24
 CTV has failed to present evidence sufficient to establish a genuine issue of material fact concerning willful misconduct by Lindemuth. While CTV alleges that Lindemuth engaged in willful misconduct, there is no evidence of such behavior. See Fed.R.Civ.P. 56(e) (mere allegations cannot be basis for denying motion for summary judgment). The undisputed facts show that Swett filled out the Air Waybill (albeit incompletely); that the goods were not shipped until January 29, 1989 (a month late); that CTV made full payment for the goods; and that a second Air Waybill exists containing corrections made by an SAS worker, additional initialing, and a signature by Swett. In his affidavit, Swett states that he did not make the additional markings.
 
 
 25
 There is no evidence, however, that Lindemuth (or Swett) intentionally acted with knowledge that its conduct would probably damage CTV, or that Lindemuth acted with reckless disregard for the consequences of its actions. While CTV asserts that Swett prepared a marked-up version of the Air Waybill, thus demonstrating willful misconduct, it has presented no evidence, in the form of affidavits, declarations, or otherwise, to substantiate this assertion. In light of the fact that Swett has submitted an uncontradicted affidavit specifically stating that he did not make the additional markings, CTV's mere assertion is insufficient to raise a genuine issue of material fact as to willful misconduct.
 
 
 26
 Similarly, the undisputed facts are insufficient to create a reasonable inference of willful misconduct. In fact, there is no evidence that Lindemuth's behavior was not proper and in accordance with the standard practices in the industry. Accordingly, the district court properly rejected CTV's allegation that a genuine issue of material fact existed with regard to the claim of willful misconduct.
 
 
 27
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 On appeal, CTV does not contest the district court's conclusion that indirect air carriers are protected by the Convention or the conclusion that the Convention's notice provision applies to indirect air carriers
 
 
 [2]
 The Air Waybill also lists Lindemuth as the agent of the direct carrier, SAS. An agent of the air carrier, like an indirect air carrier, is covered by the protections of the Convention. See Amerford, 654 F.Supp. at 682-83 (citing cases). Therefore, despite Swett's signature as agent for Space Tech, the Air Waybill clearly intended for Lindemuth to be covered by the Convention, be it as an indirect air carrier or as an agent for SAS
 
 
 [3]
 CTV attempts to avoid this result by arguing that, even if Lindemuth is an indirect carrier and even if the Convention applies, Lindemuth is also an agent of Space Tech, and accordingly is subject to liability for negligence and fraud in the role of agent. This argument is unconvincing. Because Lindemuth is an indirect air carrier, it is protected by the Convention. Allowing CTV to circumvent such protection by claiming that Lindemuth also acted as an agent for the shipper would completely vitiate the Convention and its goal of providing uniform rules of liability. Therefore, we decline to render that definition meaningless by allowing a separate action to be maintained against Lindemuth as a shipping agent