Michael A. NELSON

v.

John DOE, et al.

No. 1:93–CV–100–RCF.

United States District Court, N.D. Georgia, Atlanta Division.

Jan. 18, 1995.

Michael A. Nelson, pro se.

Daniel A. Caldwell, Asst. U.S. Atty., Atlanta, GA, for defendant.

## ORDER

RICHARD C. FREEMAN, Senior District Judge.

This action is before the court on plaintiff's correspondence to the court dated November 16, 1994 [no docket #], requesting that the court reopen this case and permit plaintiff to amend his complaint to state a claim under the Foreign Intelligence Surveillance Act, 50 U.S.C. §§ 1801 et seq. [FISA].[1] Plaintiff includes with his correspondence a copy of his proposed amended complaint. Defendant United States of America, who was served with a copy of plaintiff's letter, has registered its opposition to plaintiff's request to amend. The court believes that plaintiff's proposed amendment would be futile and, accordingly, denies his request.

■ Under Fed.R.Civ.P. 15(a), leave to amend a complaint "shall be freely given when justice so requires." When determining whether to grant leave to amend, the court should consider such factors as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The court does not abuse its discretion in denying a request to amend when "a justifying reason" exists for such denial. Nolin v. Douglas County, 903 F.2d 1546, 1550 (11th Cir.1990).

1. In its Order of November 10, 1994, the court reiterated its determination that it lacks jurisdiction to hear plaintiff's claims brought under the Federal Tort Claims Act, 28 U.S.C. §§ 2675 et seq. Additionally, noting that plaintiff's complaint had not stated a FISA claim (and, thus, no FISA claim was properly before the court), the court declined to permit plaintiff to amend his complaint to state a claim under the FISA.

As defendant points out, plaintiff has sought to hold the United States of America liable for a litany of misfortunes he and members of his family have experienced. Plaintiff alleges that, in 1982, the Central Intelligence Agency [CIA] offered him employment as an undercover agent. Proposed Amended Complaint, ¶ 3. Plaintiff "firmly rejected such offer," prompting the government and its "John Doe" operatives to engage in numerous conspiracies to "punish the Plaintiff and force him to go back to them." *Id.*, ¶ 4.

Plaintiff's specific complaints include, but are not limited to, the following:

(1) Plaintiff was first recruited to the CIA by a "[J]ewish couple who were working as the CIA undercover recruiters" at Fort Benning, Georgia. Plaintiff's Motion for Issuance of a Restraining Order [TRO Motion], ¶ 2. He later met additional CIA operatives and "informers" while attending Columbus College in Columbus, Georgia. *Id.*, ¶ 8. Some of these operatives, who were fellow students, "arranged" a marriage between plaintiff and Patricia Roberts, also a CIA agent. *Id.* The marriage "went into effect on 2/14/83." *Id.* The purpose of this marriage was "to better conduct [plaintiff's] surveillance and harassment." *Id.*

(2) The CIA, the Department of Justice, the "judicial branch," and many private organizations have, for the past twelve years, monitored "every second of the Plaintiff's life" via "numerous helicopters, surveillance teams, radars, laser communications, audio and video transmitters, various bugs, wire taps, mail cover, and other sophisticated and elaborate tools." Complaint, ¶ 7; Proposed Amended Complaint, ¶ 7. Information gathered about plaintiff's private life during the course of this surveillance "is unlawfully disseminated on an extremely large scale to public and private organizations and individuals." Complaint, ¶ 7.

(3) The CIA caused plaintiff to fail his college courses because "certain professors were instructed to give plaintiff grades less than what plaintiff deserved." TRO Motion, ¶ 12. After earning a master's degree, plaintiff began working at Northern Telecom, Inc., but "the CIA via the Plaintiff's col-leagues and manager put him under pressure to resign from his job." *Id.*, ¶ 13. Since his resignation, "CIA agents have prevented Plaintiff from securing another employment"; consequently, plaintiff "has been unemployed for over four years." *Id.*, ¶ 19.

(4) During a conversation in October, 1990, a member of plaintiff's church "indicated to [plaintiff] that the Democratic Party of Georgia would be willing to settle this matter" with plaintiff, but plaintiff would first need to file a lawsuit against that party. Complaint, ¶ 10. In a different conversation, the church member told plaintiff, "Brother Mike (Plaintiff), if you become politically independent, they will leave you and your family alone." *Id.* However, the Democratic Party reneged on its settlement offer, prompting plaintiff to seek the recusal of all judges on this court appointed by Democratic presidents. *Id.*, ¶ 11.

(5) After plaintiff realized in 1992 that his wife was a CIA agent, the CIA "made [her] to file [sic] for divorce," represented her in the divorce action in the Superior Court of Gwinnett County, and caused plaintiff to lose custody of his daughter. *Id.*, ¶ 23. Since the divorce, "the CIA has strictly prevented the Plaintiff from having any associations or involvement with women." *Id.*, at 32. Those women "who have been interested have indicated that their lives may be in danger by the CIA and have withdrawn." *Id.; see also* Amendment to Plaintiff's Motion for a Restraining Order, at 45–47. However, the CIA has placed certain teenage girls in plaintiff's path (particularly at church) "to get [plaintiff] involved with their minor females in order to conspire and file criminal charges against [plaintiff]." Appendix D to TRO Motion, at 29–30.

(6) The CIA has "infected the body of the Plaintiff via infected food and drinks" (specifically, coffee and grapes) at Dunwoody Baptist Church and other locations. TRO Motion, ¶ 31. The CIA has given plaintiff a sore throat, "post nasal dripping and stuffy nose consistent with sinusitis," an ear infection, nausea and vomiting, "fever preceded by a

chill," constipation and other ailments.[2] *Id.* Additionally, CIA agents have on several occasions entered plaintiff's bedroom at night and "tak[en] some of the silver fillings out of [his] teeth" and "[ground] down the surface of [his] teeth" while plaintiff was sleeping. Amendment to Reply Brief of Plaintiff in Support of Motion for Temporary Restraining Order, at 8. The CIA's ultimate goal is to "cause the Plaintiff substantial inflammation of brain which would cause him seizure or coma," or to take him to a hospital and perform "brain surgery on the Plaintiff in order to disable certain portions of his brain." TRO Motion, ¶ 31.

(7) The CIA has also infected plaintiff's daughter, Ashley, with "various bacterias and viruses," usually via her breakfast foods, "in order to test the microorganisms which have been produced in the CIA labs." Attachment A to Plaintiff's Motion to Expedite Issuance of a Temporary Restraining Order; *see also* Appendix A to TRO Motion. Plaintiff knows that the CIA is responsible for Ashley's continuing medical problems because he "was informed by certain individuals that [the] mother and custodian of the Child, as part of a conspiracy with ... CIA agents, has been infecting [Ashley] with various infectious diseases in order to harass [plaintiff]." Attachment to Plaintiff's Motion to Alter Order of 5/13/93.

(8) Several CIA agents caused a "brutal motor vehicle collision" on November 28, 1990, in Lawrenceville, Georgia, in which a motorist who failed to yield a right-of-way struck the side of plaintiff's car, seriously injuring plaintiff.[3] Complaint, ¶ 5; Proposed Amended Complaint, ¶ 10. Plaintiff knows that the government orchestrated this collision because the driver of the other car "seemed nervous" when plaintiff questioned him after the accident, and because the indirect route the driver claimed to be taking to his intended destination when the accident occurred was illogical and "strange."[4] Complaint, ¶¶ 12–15; Proposed Amended Complaint, ¶ 20. The purpose of the collision was to "prevent [plaintiff] from pursuing his lawsuit against the government." Proposed Amended Complaint, ¶ 23. Plaintiff seeks $31,504,-905,754.53 in damages resulting from this accident. Complaint, ¶ ; Proposed Amended Complaint, ¶ 20.

■ The court finds that permitting plaintiff to amend his complaint to fit these claims into a different statutory rubric (namely, the FISA) would be futile. A finding of futility is proper "when the proffered amendment merely restates the same facts using different language ..." *Wakeen v. Hoffman House, Inc.,* 724 F.2d 1238, 1244 (7th Cir. 1983). Additionally, a district court may find that amendment would be futile if the restated claim's defeat on summary judgment is inevitable. *Johnson v. American Airlines, Inc.,* 834 F.2d 721, 724 (9th Cir.1987). The court is of the firm belief that plaintiff will not be able to prove his claims, and the court therefore will not put the government to the continued effort and expense of defending against them.

Accordingly, plaintiff's request to amend his complaint [no docket #] is DENIED. Plaintiff SHALL NOT submit any more filings in conjunction with this case and SHALL NOT direct any further correspondences regarding this case to the court. If plaintiff is dissatisfied with the decision of this court, he may appeal it to the Eleventh Circuit within 30 days of the entry of this Order. The address and telephone number of the Clerk of that court are as follows:

---

2. Plaintiff also notes that "the CIA by arranging numerous conspiracies has attacked the mental integrity of Plaintiff in order to cause him mental disorder (paranoia, etc.)" TRO Motion, at 33.

3. Plaintiff claims that several events led up to the accident: his pastor informed him that he "may become the target of a car accident"; he was the target of two "vicious dog attacks" in his neighborhood; and a pastor at another church told plaintiff that "if he publicizes their [the conspirators'] conduct, they may use more pressure and wipe him out." Complaint, ¶ 12.

4. Plaintiff attached to his original complaint diagrams illustrating two routes to the other driver's intended destination (a nearby convenience store): the circuitous route the driver claimed to be taking, and the direct route to the store. *See* Exhibit 10 to Complaint.

Office of the Clerk
United States Court of Appeals for the
Eleventh Circuit
56 Forsyth Street, N.W.

Atlanta, Georgia 30303
(404) 331–6187
SO ORDERED.