[646 NYS2d 691]

RALPH TAWIL et al., Appellants, v FINKELSTEIN BRUCKMAN WOHL MOST & ROTHMAN, Respondent.

First Department, August 29, 1996

## APPEARANCES OF COUNSEL

*Allen Green* of counsel *(Kalnick, Klee & Green, P. C.,* attorneys), for appellants.

*Eli S. Cohn* of counsel *(Diane K. Kanca* and *Shawn P. Landau* on the brief; *McDonough Marcus Cohn & Tretter, L. L. P.,* attorneys), for respondent.

## OPINION OF THE COURT

SULLIVAN, J.

In this legal malpractice action, plaintiffs seek to recover from the defendant law firm $3,500,000 representing $3,000,000 that plaintiffs raised for investment purposes, as well as the associated costs arising out of the collapse of the real estate project which was the subject of the investment. Defendant law firm allegedly induced plaintiffs and eventually other investors, recruited by plaintiffs, to purchase unimproved property by advising them that the registration requirements of the State and Federal securities laws could be avoided by using nominees; the advice was not sound and, when appropriate permits became unobtainable, the transaction fell apart and the purchase price, which had been paid at the closing of title, was essentially lost. Pursuant to an agreement drafted by the defendant law firm, plaintiffs were appointed nominees of all investors with full power of attorney to sign any and all documents necessary to effectuate the investors' rights and interests in a $3,000,000 mortgage and note, which they would receive at the closing, in consideration of the investors' contribution.

Plaintiffs allege two causes of action. In the first, they claim negligence based on defendants' representation that the sale of interests in the project complied with Federal and State securities laws when, in fact, all governmental and regulatory approvals required as a condition to the construction of the project had not been obtained. The second cause of action alleges breach of contract by failing to discover that all governmental

and regulatory approvals had not been obtained and by permitting the closing to take place.

After the project's collapse and the loss of the $3,000,000 investment, certain of the other investors sued plaintiffs in the United States District Court for the Eastern District of New York, alleging, *inter alia*, that plaintiffs violated Federal securities laws in connection with the project, causing the various investors to sustain the loss of their investment. That litigation was terminated in accordance with a settlement agreement pursuant to which all investors, referred to therein as "sellers", assigned all their right, title and interest in and to their investments and to the instant litigation and another lawsuit to plaintiffs, referred to therein as "purchasers", for which plaintiffs paid the other investors $933,000, which included the $200,000 commission they had received for initially raising the monies.

Paragraph 1.02 of that agreement, which, insofar as is applicable to this action and a related one against the Town of Babylon, is at the heart of the issue here, provided as follows: "Sellers hereby assign all their right, title and interest in both actions to Purchasers, and permit Purchasers to sue as Sellers' assignees; alternatively, Sellers or any of them, shall have the option to join as plaintiffs in either or both of said actions. Sellers will join in any action or actions if it is shown that Purchasers would lose all or part of Purchasers' claims or rights."

The defendant law firm moved to dismiss the complaint on the ground that plaintiffs lacked legal capacity to sue and for partial summary judgment reducing plaintiff's claim to $550,000, "the amount of their respective original investments". In so moving defendant challenged the validity of the assignment contained in the settlement agreement, claiming that it was "totally equivocal", constituted a "conditional power of attorney" and was voidable. In that regard, defendant argued that the other investors retained the right to revoke the assignment at any time by exercising an option to join this action as plaintiffs. Plaintiffs cross-moved for leave to serve an amended complaint to add an allegation that they were acting not only in their own behalf but as assignees of all of the right, title and interests of the other investors.

The IAS Court granted defendant's motion to limit the ad damnum clause to $550,000 and denied the cross motion, finding that by virtue of the option to join plaintiffs in this action, the other investors retained the right to revoke the assignment of their interests. Thus, it held, the purported assignment of

the other investors' rights in this action was invalid. Plaintiffs' motion for reargument was granted and, on reargument, the court adhered to its decision. Since we find a valid assignment of the other investors' rights, we reverse the original order, deny the motion to limit the ad damnum clause and grant plaintiffs' cross motion to amend the complaint.

The language of the settlement agreement could not be clearer in its assignment of "all of the Sellers' rights, title and interest in and to" the project to plaintiffs. No special form or language is necessary to effect an assignment as long as the language shows the intention of the owner of a right to transfer it. (*See, American Banana Co. v Venezolana Internacional De Aviacion*, 67 AD2d 613, *affd* 49 NY2d 848; *see also, Hill v Satra Corp.*, 65 AD2d 737.) Among the tort claims which may be the subject of assignment are those for professional malpractice. (*Oppel v Empire Mut. Ins. Co.*, 517 F Supp 1305 [SD NY]; 6 NY Jur 2d, Assignments, §§ 4, 16.)

Apparently, the IAS Court was led astray by paragraph 1.02, by which the sellers assigned "all their right, title and interest" in this litigation to plaintiffs and permitted plaintiffs "to sue as Sellers' assignees; alternatively, Sellers, or any of them, shall have the option to join as plaintiffs". The first part of the quoted sentence constituted a clear assignment to plaintiffs of all the sellers' right, title and interest in the litigation and permitted plaintiffs to sue as their assignees. The use of the word "alternatively" apparently confused the IAS Court. As we read the second portion of the quoted sentence, the word, "alternatively", refers to an option to the other investors to join as plaintiffs, as opposed to permitting plaintiffs to sue as the sellers' assignees. The alternative to permitting plaintiffs to sue as the sellers' assignees is the option to join as plaintiffs in this action. In stating that the alternative to exercising the option to join as plaintiffs was "revoking the assignment", the IAS Court misread paragraph 1.02. The IAS Court construed the mere fact of the option to join plaintiffs in this action as a reservation of the right to revoke the assignment.

The court also ignored plaintiffs' explanation, which went unchallenged, as to the purpose of the language in question. The other investors agreed to join this action should it be necessary that each investor be named as a plaintiff to preserve the claims, which belonged to plaintiffs, against the defendant law firm. The other investors had every incentive to see that their claims against defendant law firm be advanced by plaintiffs. After all, the settlement agreement specifically

provided for a cash increment to the purchase price based on the proceeds of this lawsuit. Thus, the other investors had a pecuniary interest in assisting plaintiffs in enforcing these claims. The option to join the action was part of an effort to assist in that regard and in no manner reflected a revocation of the assignment.

A second factor on which the IAS Court erroneously relied was its construction of the word "consultation", which also appears in paragraph 1.02. The court found that the provision as to consultation evidenced "the investors' control over this action and their ability to revoke the assignment". Pursuant to paragraph 1.02, the purchasers (plaintiffs) are given reasonable discretion as to all decisions relating to the action, including discontinuance, settlement, choice of counsel and fees and disbursements, "made after consultation on a current basis with a designated representative of Sellers." The IAS Court apparently equated "consultation" with "approval." While consultation is provided for, the other investors are given no right to condition the implementation of decisions made by plaintiffs with respect to this litigation on their approval. The right of consultation has absolutely no relationship to a right of revocation of the assignment.

Since the assignment is valid, there was no basis to limit plaintiffs' recovery to their own investment of funds and plaintiffs, as assignees under the settlement agreement, had the right to assert the claims of the other investors.

Accordingly, the order, Supreme Court, New York County (Diane Lebedeff, J.), entered March 20, 1995, which granted defendant's motion to limit plaintiffs' ad damnum clause to $550,000 and denied plaintiffs' cross motion for leave to amend the complaint, should be reversed, on the law, with costs and disbursements, the motion denied and the cross motion granted. The appeal from the order of the same court and Justice, entered October 10, 1995, granting reargument, and which, on reargument, adhered to the original determination, is dismissed as moot, without costs.

MURPHY, P. J., WALLACH, NARDELLI and TOM, JJ., concur.

Order, Supreme Court, New York County, entered March 20, 1995, which granted defendant's motion to limit plaintiffs' ad damnum clause and denied plaintiffs' cross motion for leave to amend the complaint, reversed, on the law, with costs and

disbursements, the motion denied and the cross motion granted, and appeal from order, same court and Justice, entered October 10, 1995, dismissed as moot, without costs.