453 So.2d 123 (1984)
PARKWAY GENERAL HOSPITAL, INC., a Florida Corporation, Roberta Braun, Caroline Nall, Wilma Smith and Barbara Jonaitis, Petitioners,
v.
Peter G. ALLINSON, M.D., Respondent.
No. 83-344.
District Court of Appeal of Florida, Third District.
July 10, 1984.
*124 Paul & Burt and Dan Paul and Franklin G. Burt, Miami, for petitioners.
Floyd, Pearson, Stewart, Richman, Greer & Weil and Gerald F. Richman, Miami, for respondent.
Before SCHWARTZ, C.J., and HENDRY and BASKIN, JJ.

ON REHEARING
HENDRY, Judge.
Parkway General Hospital, Roberta Braun, Caroline Nall, Wilma Smith and Barbara Jonaitis, defendants below, petition this court for a rehearing of our order of April 4, 1983 denying a writ of common law certiorari to quash an order of the trial court. That order denied their motion for a protective order, thereby granting respondent herein discovery of the minutes of medical staff review committee meetings at which his continuation as a member of the medical staff at Parkway General was discussed and voted upon. We grant the motion for rehearing and grant certiorari to quash the ruling of the trial court insofar as it pertains to the proceedings and records of the medical staff review committee.
The underlying cause of action is one for defamation, conspiracy, and injunctive relief. Respondent had been an associate of Miguel Figueroa, Jr., M.D. for two years in Dr. Figueroa's anesthesiology practice. Personality conflicts developed between the two men and respondent left the practice after negotiating a modification of the noncompete clause of his employment contract. Respondent remained on the staff at petitioner hospital. Respondent's initial complaint for defamation alleged a series of vexatious acts, false medication and nursing reports, and malicious statements by Dr. Figueroa and the four individual petitioners named herein which started as soon as he left Dr. Figueroa's practice and culminated in the recommendation by the executive committee of the medical staff that disciplinary action be taken against respondent. Respondent alleges that there is a causal relationship between the problems that he had with Dr. Figueroa and the subsequent disciplinary proceedings. When petitioner hospital in fact suspended respondent from its medical staff, respondent amended the complaint to add Parkway General Hospital as a defendant and to add a count alleging conspiracy and a count requesting injunctive relief. As the cause proceeded, respondent attempted to obtain the minutes of meetings held by various subcommittees of the medical staff review committee at which he was discussed. Petitioners moved for a protective order, arguing that section 768.40(4), Florida Statutes (1981), provided an absolute immunity against production of these documents. At the time the trial court ruled in respondent's favor, prevailing case law indicated that section 768.40(4) applied only *125 to medical malpractice actions and not to other actions, such as defamation. Cf. Good Samaritan Hospital Association, Inc. v. Simon, 370 So.2d 1174 (Fla. 4th DCA 1979).
While this petition for rehearing was before the court, the Florida Supreme Court exercised its discretionary review powers pursuant to Rule 9.030(a)(2)(A)(v), Florida Rules of Appellate Procedure, and accepted jurisdiction to review the decision of the Fourth District Court of Appeal in Auld v. Holly, 418 So.2d 1020 (Fla. 4th DCA 1982), a defamation case involving denial of hospital staff privileges. The fourth district held that the discovery privilege set out in section 768.40(4) applied only to medical malpractice actions. Resolution of the instant petition was stayed pending final determination by the Florida Supreme Court. The Court has now rendered a decision, Holly v. Auld, 450 So.2d 217, (Fla. 1984) [9 FLW 158]. It is on the basis of that decision that we quash the ruling of the trial court in the instant case.
The perplexing question up to this point has been how to reconcile § 768.40(2), which provides immunity from liability for providing information to or participating on a medical review committee  as long as the acts are done without malice or fraud, with § 768.40(4), which prohibits, in any civil action, discovery of the proceedings and records of medical review committees. Subsection 2 seemingly carves out a defamation exception to the statute which subsection 4 then makes impossible to prove. Holly v. Auld, supra, at 221 (Shaw, J. dissenting). That result seems harsh, especially when confronted with the facts of a case such as this; where the allegations are that the respondent successfully practiced at petitioner hospital for over two years; that the suspension of staff privileges is a direct result of his problems with a better established, and economically more powerful doctor. It was this odd tension between the two subsections, plus a desire not to handicap litigants in their discovery efforts (or to believe that the legislature would), plus the title of the section ("Medical Malpractice and Related Matters") which led courts to the conclusion that § 768.40(4) dealt exclusively with medical malpractice actions.
The majority opinion reconciles this conundrum by focusing on the legislative intent in passing section 768.40(4). The court stated:
In an effort to control the escalating cost of health care in the state, the legislature deemed it wise to encourage a degree of self-regulation by the medical profession through peer review and evaluation. The legislature also recognized that meaningful peer review would not be possible without a limited guarantee of confidentiality for the information and opinions elicited from physicians regarding the competence of their colleagues.
At 219 (footnote omitted). Thus, the legislature, recognizing that the continued headlong rise in health care costs would have a disastrous effect on the state's residents, made a choice. It realized that simply immunizing health care professionals for providing information to a medical review committee (see § 768.40[2]) would not effect the desired result  the self-regulation of the profession. That is, it was not enough to provide immunity from liability in a defamation suit because 1) that still allowed defamation lawsuits against health care professionals and 2) the mere threat of involvement as a defendant in such a lawsuit was enough to deter those people from participating in or even giving information to a medical review committee. Moreover, the fact that an announced privilege existed did not stop the filing of defamation suits because it was only a "qualified" privilege; a privilege dependent upon the participants acting "without malice or fraud." Thus, in order to insure valid peer review, the legislature had to protect the participants therein, even though by doing so it was necessary to encroach upon certain rights held by others. As the Supreme *126 Court pointed out, this is a valid exercise of legislative power. The legislature chose to promote the protection of those giving information over the "rights" of those who were the subject of evaluation by enacting section 768.40(4), which shields from discovery those notes, statements, transcripts, or records of medical review committee proceedings.
Again, however, the legislature has enacted a limited privilege. To say that certain records shall not be subject to discovery or be admitted as evidence presupposes a lawsuit for which this information is desired. In addition, the statute is quite explicit in stating that documents or records otherwise available from original sources are not immune from discovery or use nor should anyone who participates in a review committee be prevented from testifying as to matters within his knowledge. The shield of confidentiality protects only those words spoken within the four walls of the committee meeting itself and the records made as a direct result thereof. Anything else is discoverable and may be used as evidence at trial.
In the context of the case before us, the foregoing means that the respondent may move forward with his lawsuit against the defendants as before, but he may not obtain the records from the medical review committee meetings. To be sure, that will probably have an impact on his ability to prove the conspiracy count, or at least defendant Parkway General's alleged participation in a conspiracy. Respondent is, however, free to pursue that information through other avenues, as the statute makes clear. All other discovery against Dr. Figueroa and the four petitioner nurses, the nursing reports, the alleged defamatory statements, and so forth remain unaffected by this decision.
Petition for writ of common law certiorari granted. The ruling of the trial court denying a protective order is quashed. Remanded for further proceedings not inconsistent with this opinion.