599 So.2d 111 (1992)
Elois Posey CRUGER, etc., Petitioner,
v.
Douglas J. LOVE, M.D., Respondent.
No. 77293.
Supreme Court of Florida.
April 23, 1992.
*112 Richard J. Roselli of Krupnick, Campbell, Malone and Roselli, P.A., Fort Lauderdale, for petitioner.
James C. Sawran of Billing, Cochran, Heath, Lyles & Mauro, P.A., Fort Lauderdale, for respondent.
GRIMES, Justice.
We review Love v. Cruger, 570 So.2d 362 (Fla. 4th DCA 1990), on the basis of conflict with Jacksonville Medical Center, Inc. v. Akers, 560 So.2d 1313 (Fla. 1st DCA 1990). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
Elois Cruger sued Dr. Douglas Love on behalf of her son for the doctor's alleged negligent treatment of her son's fractured thumb. During the course of the lawsuit, Cruger sought from three local hospitals copies of Dr. Love's applications for privileges at those hospitals and a delineation of the privileges granted.[1] The hospitals were not parties to the malpractice action. Dr. Love objected, claiming that the documents were privileged. The trial court ordered that the documents be produced. The Fourth District Court of Appeal held that the documents were privileged from discovery by virtue of sections 766.101 and 395.011, Florida Statutes (1989), and the policy behind those statutes.
Sections 766.101 and 395.011 pertain to peer review and credentialing by hospitals and other health care organizations. Section 766.101(2) requires that medical review committees screen, evaluate, and review the professional and medical competence of applicants to and members of hospital medical staffs. Section 395.011(6) requires the governing body of every licensed hospital facility to establish standards and procedures to be applied in considering and acting upon applications for staff membership or professional clinical privileges.
*113 The Florida Legislature enacted these peer review statutes in an effort to control the escalating cost of health care by encouraging self-regulation by the medical profession through peer review and evaluation. Holly v. Auld, 450 So.2d 217, 219-20 (Fla. 1984) (interpreting former section 768.40(4), Florida Statutes, the predecessor to section 766.101). In order to make meaningful peer review possible, the legislature provided a guarantee of confidentiality for the peer review process. Holly, 450 So.2d at 220. Section 766.101(5), provides:
The investigations, proceedings, and records of a [medical review] committee ... shall not be subject to discovery or introduction into evidence in any civil action against a provider of professional health services arising out of the matters which are the subject of evaluation and review by such committee, and no person who was in attendance at a meeting of such committee shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such committee or as to any findings, recommendations, evaluations, opinions, or other actions of such committee or any members thereof. However, information, documents, or records otherwise available from original sources are not to be construed as immune from discovery or use in any such civil action merely because they were presented during proceedings of such committee, nor should any person who testifies before such committee or who is a member of such committee be prevented from testifying as to matters within his knowledge, but the said witness cannot be asked about his testimony before such a committee or opinions formed by him as a result of said committee hearings.
Section 395.011(9) is identical, except that it applies to the investigations, proceedings, and records of hospital boards.
The scope of this statutory privilege is at issue here. Cruger claims that the privilege is intended to encourage candor on the part of peer review committee members and those who provide information or comments to the committee about the applicant's competence. She argues that this policy is not advanced by protecting an application for privileges from discovery. Such an application is not privileged, she claims, because it was not generated by the committee or at its request and does not include comments on the applicant's competence.
In addition to the Fourth District Court of Appeal, two other Florida district courts of appeal have considered the question of whether a doctor's application for staff privileges is protected by the statute. In Tarpon Springs General Hospital v. Hudak, 556 So.2d 831 (Fla. 2d DCA 1990), the Second District Court of Appeal held that an application for privileges is necessarily part of the records of a medical review committee and is therefore privileged from discovery.
However, the First District Court of Appeal reached the opposite conclusion in Jacksonville Medical Center, Inc. v. Akers, 560 So.2d 1313. The court looked to the statutory language that provides "information, documents, and records otherwise available from original sources are not to be construed as immune from discovery or use ... merely because they were presented during proceedings of such committee." § 766.101(5), Fla. Stat. (1989) (emphasis added). The court interpreted this to mean that the statute protects only documents created by the internal hospital entity and not those produced by outside entities. Jacksonville Medical Ctr., 560 So.2d at 1315. The court determined that because the doctor's application for privileges was generated by the doctor and submitted by him to the hospital for consideration, it was not exclusively a record of the peer review committee.
The statutes do not define what constitutes records of a committee or board. Therefore, we must look to the legislative intent and policy behind the statutes to determine the extent of the privilege. See White v. Pepsico, Inc., 568 So.2d 886, 889 (Fla. 1990); Devin v. City of Hollywood, 351 So.2d 1022, 1023 (Fla. 1976). We have previously held that "[t]he discovery privilege *114 ... was clearly designed to provide that degree of confidentiality necessary for the full, frank medical peer evaluation which the legislature sought to encourage." Holly v. Auld, 450 So.2d at 220. Without the privilege, information necessary to the peer review process could not be obtained. Feldman v. Glucroft, 522 So.2d 798, 801 (Fla. 1988). While we recognized in Holly that the discovery privilege would impinge upon the rights of litigants to obtain information helpful or even essential to their cases, we assumed that the legislature balanced that against the benefits offered by effective self-policing by the medical community. Holly, 450 So.2d at 220.
We hold that the privilege provided by sections 766.101(5) and 395.011(9), Florida Statutes, protects any document considered by the committee or board as part of its decision-making process. The policy of encouraging full candor in peer review proceedings is advanced only if all documents considered by the committee or board during the peer review or credentialing process are protected. Committee members and those providing information to the committee must be able to operate without fear of reprisal. Similarly, it is essential that doctors seeking hospital privileges disclose all pertinent information to the committee. Physicians who fear that information provided in an application might someday be used against them by a third party will be reluctant to fully detail matters that the committee should consider. Accordingly, we find that a physician's application for staff privileges is a record of the committee or board for purposes of the statutory privilege.
We reject the interpretation adopted in Jacksonville Medical Center. Under that interpretation documents, information, or records in the possession of the committee are not protected if they originated from sources outside the board or committee proceedings. If the legislature intended the privilege to extend only to documents created by the board or committee, then surely that is what it would have said. Virtually all of the information considered during the peer review process originates from outside sources. This interpretation would effectively eliminate the protections granted by the statute. See Jacksonville Medical Ctr., 560 So.2d at 1316 (Allen, J., dissenting).
We interpret the "otherwise available" language of the statute to mean that a document that a party secures from the original source is not privileged merely because it was presented during peer review committee or board proceedings. See Feldman v. Glucroft, 522 So.2d 798, 801 (Fla. 1988) ("The shield of confidentiality protects what is presented or spoken to the committee at its meetings. If that information is available from other than committee sources, then it may be used in a defamation action... ."). See also Jacksonville Medical Ctr., 560 So.2d at 1316 (Allen, J., dissenting). For example, if Cruger obtained a copy of the application from Dr. Love, a hospital could not assert that the document was privileged merely because the application was considered as part of the peer review or credentialing process.
A second issue before us is whether the instant action is one "arising out of the matters which are the subject of evaluation and review by such committee... ." § 766.101(5), Fla. Stat. We find that it is such an action. The instant malpractice action calls into question Dr. Love's professional and medical competence. Although none of the hospitals from which the information was sought are parties to the action, Dr. Love is on the medical staff of each of those hospitals. The medical review committees of those hospitals evaluated and reviewed Dr. Love's professional and medical competence to obtain staff privileges.
The policy behind the confidentiality privilege mandates this interpretation. See Byrd v. Richardson-Greenshields Sec., Inc., 552 So.2d 1099, 1102 (Fla. 1989) (a court's obligation is to honor the obvious legislative intent and policy behind an enactment, even where that intent requires an interpretation that exceeds the literal language of the statute). The privilege afforded to peer review committees is intended *115 to prohibit the chilling effect of the potential public disclosure of statements made to or information prepared for and used by the committee in carrying out its peer review function. See Dworkin v. St. Francis Hosp., Inc., 517 A.2d 302, 307 (Del. Super. Ct. 1986). This chilling effect is attributable to several factors. As one commentator has noted:
[D]octors seem to be reluctant to engage in strict peer review due to a number of apprehensions: loss of referrals, respect, and friends, possible retaliations, vulnerability to torts, and fear of malpractice actions in which the records of the peer review proceedings might be used. It is this ambivalence that lawmakers seek to avert and eliminate by shielding peer review deliberations from legal attacks.
Gregory G. Gosfield, Medical Peer Review Protection in the Health Care Industry, 52 Temp.L.Q. 552, 558 (1979) (footnote omitted). These fears are alleviated only by interpreting the statute as we do today.
A different interpretation of this provision would completely eviscerate the protection the legislature sought to provide. Ultimately, all peer review committee records would be discoverable. What would not be discoverable in one action because of the nature of the lawsuit would be discoverable in another action. The confidential nature of the peer review proceedings would be obliterated. See Sanderson v. Frank S. Bryan, M.D., Ltd., 361 Pa.Super. 491, 522 A.2d 1138, 1141 (1987) (interpreting the confidentiality provision of Pennsylvania's Peer Review Protection Act), appeal denied, 517 Pa. 624, 538 A.2d 877 (1988).
We note that our decision today does not prohibit Cruger from obtaining the information contained in the applications from other sources. Cruger seeks the applications for privileges in order to verify the information Dr. Love provided during discovery. Cruger may verify that information from other sources such as administrative records from the medical schools Love attended and court records of any other malpractice actions against Love.
Accordingly, we approve the decision of the court below. We disapprove of Jacksonville Medical Center, Inc. v. Akers to the extent it is inconsistent with this opinion.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT and HARDING, JJ., concur.
KOGAN, J., concurs specially with an opinion, in which SHAW, C.J., concurs.
KOGAN, Justice, specially concurring.
As Judge Allen noted in his partial dissent in Jacksonville Medical Center, 560 So.2d at 1316-17 (Allen, J., concurring in part, dissenting in part), the language of sections 395.011(9) and 766.101(5) simply does not support the construction employed by the majority in that same case. The statute extends a privilege to cover "documents," "information," and "records" except those that are "otherwise available from original sources." §§ 395.011(9) & 766.101(5), Fla. Stat. (1989). The most reasonable construction of this language is that the privilege does not cover documents actually in the possession of any person or entity apart from the committee or board. But the privilege does cover all documents actually in the possession of the committee or board itself, even if copies may be obtained elsewhere.
The entire thrust of the statutes supports this conclusion. For example, the statutes both specify that all testimony to a committee or board and all statements of its members during a meeting are covered by the privilege. A person never can be compelled to disclose any such testimony or statement, or even opinions formed during official hearings. Id. However, the privilege does not extend to cover "matters within [the person's] knowledge." Id. In other words, persons can be compelled to state what they actually know to be true, but they cannot say whether they disclosed this same information to a board or committee.
It would be inconsistent to think that the legislature extended this broad privilege to *116 spoken statements and opinions but attached no similar privilege to written documents possessed by a board or committee. The entire thrust of the statute is that all official activities of the boards or committees are veiled with the privilege. Parties are free to ask available witnesses what they actually know, and to obtain documents or records from the original, nonprivileged sources. The parties simply cannot collect this same material or information from the boards or committees. Otherwise, I fully concur with the majority.
SHAW, C.J., concurs.
NOTES
[1] Cruger has dropped the request for delineation of the privileges granted and now seeks only the applications for privileges.