**John DOE, M.D.**[*]

v.

**UNUM LIFE INSURANCE COMPANY OF AMERICA.**

**No. 1:94–CV–1449–RCF.**

United States District Court,
N.D. Georgia,
Atlanta Division.

June 5, 1995.

\* Note: The court has sealed this file due to confidentiality concerns regarding plaintiff's disability.

Jerry A. Lumley, C. Ashley Royal, Jones, Cork & Miller, Macon, GA, for plaintiff.

Allen S.C. Willingham, Michael J. Harrar, III, Love & Willingham, Atlanta, GA, for defendant.

## ORDER

RICHARD C. FREEMAN, Senior District Judge.

This action is before the court on the following motions: plaintiff's motion to quash [# 40–1]; non-party Macon Northside Hospital's motion to quash [# 41–1]; plaintiff's motion to amend [# 32–1]; and plaintiff's motion for partial summary judgment [# 30–1]. All motions are opposed.

*Background*

The salient facts of this case have been set forth in previous Orders. For present purposes, however, the court notes that this action continues to center around plaintiff's alleged drug usage prior to applying for disability insurance from defendant in September, 1991. In the court's Order of November 30, 1994, the court held that the Georgia law of physician-patient privilege applies to this case, and that any records or documents containing information plaintiff may have related to any physician regarding his prior drug usage are privileged communications. *See* Order of November 10, 1994, at 7–9.

Because they were not ripe for review, the court did not pass upon plaintiff's motions for partial summary judgment and to amend his complaint to include a claim for invasion of privacy. In addition to these motions, the court must now address two separate motions to quash subpoenas defendant issued to Macon Northside Hospital and Coliseum

Park Medical Center [collectively, "the institutions"], which subpoenas request information relating to the suspension of plaintiff's physician privileges at these institutions. The court will address the subpoenas first.

*Discussion*

### A. Subpoenas

■ Defendant's subpoenas request: (1) all documents "depicting disciplinary action taken by" the institutions, (2) all documents "otherwise available from original sources ... submitted for investigation and review" by any peer review organization,[1] (3) all documents "identifying any witness who testified or otherwise presented evidence" to any peer review organization, and (4) all documents "otherwise available from any other sources concerning any other investigation of Dr. [Doe]" arising out of any complaint regarding plaintiff. *See* Plaintiff's Motion to Quash, Exhibit A to Exhibits A & B. The subpoenas were sent to Macon Northside Hospital and Coliseum Park Medical Center [collectively, "the institutions"], the latter of which did not file a separate motion to quash as did Macon Northside Hospital.

Plaintiff and non-party Macon Northside Hospital contend that any information in the possession of the institutions regarding the events surrounding the decisions by the institutions to suspend plaintiff's privileges is shielded from discovery by Georgia's peer review statute, O.C.G.A. §§ 31–7–130 *et seq.*, or Georgia's medical review statute, O.C.G.A. §§ 31–7–140 *et seq.* Defendant argues that the items sought are those that would be "otherwise available from original sources," a category of information expressly made non-privileged by the statutes, and that its subpoenas are designed to acquire only that information.

As plaintiff correctly points out, although defendant seeks, by serving the institutions directly, to discover materials that, in some cases, would not be protected from the peer review statutes, defendant nonetheless seeks information from the peer review organizations themselves. This is improper. Though

it is clear that documents and information "otherwise available from original sources" are not immune from discovery, it is also clear that peer review organizations are not "original sources" of "otherwise discoverable" information, both because any information for which such organizations are original sources is absolutely privileged, and because all "otherwise available" material must be acquired from the original source.

The court first notes that the two statutes at issue place an exceedingly wide blanket of confidentiality over information generated by health care providers concerning the quality and efficiency of medical care. *See Emory Clinic v. Houston,* 258 Ga. 434, 369 S.E.2d 913, 913 (1988) (statutes place an "absolute embargo upon the discovery and use of all proceedings, records, findings, and recommendations of peer review groups and medical review committees in civil litigation"). In *Hollowell v. Jove,* 247 Ga. 678, 279 S.E.2d 430, 434 (1981), the Georgia Supreme Court held that even "[t]he discovery of *whether* any medical review committee meetings ... were held, and *who attended* the meetings necessitate an intrusion into the 'proceedings' of the committee." (Emphasis added). With these principles in mind, the court must conclude that defendant's subpoenas, as drafted, cannot be enforced.

Georgia courts have never explicitly held that information "otherwise available from original sources" must be obtained from the original sources, though that is the implication running throughout the relevant opinions rendered on the question of "original source" information. In addition to the broad net of privilege cast by the Georgia statutes as recognized in *Hollowell,* various Georgia court decisions hold that original source discovery is to be as disconnected from the proceedings of the reviewing committee as possible. Thus, for example, in *Eubanks v. Ferrier,* 245 Ga. 763, 267 S.E.2d 230, 233 (1980), the Georgia Supreme Court held that, although members of a review committee may testify, they may testify only as an ordinary expert witness and answer

---

1. Because peer review and medical review organizations are treated the same under the statutes creating the privileges herein discussed, the

court will refer to the entities potentially affected by the subpoenas as "peer review" organizations, committees, or the like.

hypothetical questions, and they cannot divulge even their membership on the committee.

Further, in *Cobb County Kennestone Hospital Auth. v. Martin,* 208 Ga.App. 326, 430 S.E.2d 604, 605–06, *cert. denied,* (Ga. July 15, 1993), the Georgia Court of Appeals, in affirming the principle that the privilege does not extend to material otherwise discoverable from original sources, held that certain factual data that was available to the committee, but not generated by or collected for the use of the committee, was discoverable. However, the court also noted that "the information sought here is obtainable *from* 'original sources,' that is, hospital medical records and information within the knowledge of the infection rate nurse." *Id.,* 430 S.E.2d at 605 (emphasis added).[2] The court specifically cautioned, however, that the statutes "do not themselves provide that 'original sources' themselves are discoverable, but merely that the matter presented to the peer review committee is not privileged if it is obtainable *from* original sources." *Id.,* 430 S.E.2d at 605 (emphasis added).

Finally, in a recent opinion by the Georgia Supreme Court, the court stated:

> While the statute precludes a party from discovering the proceedings and records of a peer review organization, it specifically authorizes a party to seek *from original sources* documents which the peer review organization examined, and to examine anyone who appeared before or was a member of the peer review organization, so long as the witness is not asked about the peer review proceedings.

*Freeman v. Piedmont Hospital,* 264 Ga. 343, 444 S.E.2d 796, 797 (1994) (emphasis added).

Again, these decisions do not explicitly state that non-privileged material (*i.e.,* material "otherwise available from original sources") must be obtained from the original sources themselves, but that remains the clear implication. The court notes, however, that courts in sister states employing nearly identical language in their peer review statutes *have* expressly so stated. In *McGee v. Bruce Hosp. System,* 439 S.E.2d 257, 260 (S.C.1993) the South Carolina Supreme Court ruled "[T]he statute does not protect information if obtained from alternative sources. Hence, the plaintiff seeking discovery cannot obtain documents which are available from the original source directly from the hospital committee, but may seek them from alternative sources." In *Cruger v. Love,* 599 So.2d 111, 114 (Fla.1992), the Florida Supreme Court held that the peer review statutes (again, identical in substance and most formalities) "protects any document considered by the committee or board as part of its decision-making process." While this statement might seem to foreclose inquiry into all information that the board considered, the court later made clear that "a document that a party secures *from the original source* is not privileged merely because it was presented during peer review committee or board proceedings." *Id.* (emphasis added). Thus, the court posited that a copy of a document sought from the committee would be privileged, but one obtained from an original source, even if identical, would not. *Id.*

The teaching of these cases is that committee proceedings—in all respects—are inviolate and nondiscoverable. The actual documents presented to the committee are privileged *if they are sought from the committee.* If the committee considered documents or testimony from outside sources (which, as the *Cruger* court noted, is almost everything it might consider), then discovery of that information must come from the outside sources. In short, the peer review statutes confer upon peer review organizations the qualities of a black hole; what goes in does not come out, and, unless the information exists in duplicate in the surrounding orbit, nothing that went in is discoverable.[3]

---

**2.** *See also id.* ("What is not discoverable is ... records generated solely to provide peer review [cit. omitted] or information gained exclusively through or by the committee for investigation by peer review, that is, discovery relative to medical or peer review.").

**3.** It should also be noted that, even the orbiting duplicate information is not discoverable to the extent that it relates directly to the peer review proceedings—such as testimony from witnesses appearing at the hearing about their testimony at the hearing, documents written to facilitate the

In essence, then, there are two kinds of privileged information covered by the statute: (1) material that relates directly to the peer review investigation, which is always nondiscoverable, despite its source; and (2) information that would have existed regardless of the institution's investigation, but is sought *from the peer review body* itself. To illustrate the first category, the court notes that in *Emory Clinic v. Houston,* 258 Ga. 434, 369 S.E.2d 913, 914 (1988), the court held that the *source* of privileged information is irrelevant, so long as the information is privileged. In that case, the information came from an "outside" source, but, because of its *nature,* was nondiscoverable.

On the other hand, in the second category, "outside information" may not be always privileged, but it will still be nondiscoverable if it is sought from an "inside" source. For example, in *Martin,* the infection rate data would have existed whether the committee reviewed it or not. In *Eubanks,* the medical review committee members would have had expert opinions whether they were asked to render them at the meetings or not. But seeking that information from the peer review committees would be improper. While that information is not protected by the statutes, the statutes do not authorize the court to compel the peer review committees to act as a convenient or efficient surrogate for the original source.

The court recognizes that the law of peer review privilege has not ceased evolving. This much, however, is known: witnesses appearing at a hearing can be deposed, but not on the subject of their testimony before the committee (as distinguished from matters within their personal knowledge, which may or may not at times be the same); documents that would have existed regardless of whether the committee may have considered them in an investigation are discoverable, but only from their original sources; and names and addresses of people having personal knowledge of events that are the subject matter of the litigation may be acquired through interrogatory and deposition, *see Mount Sinai*

*Medical Center v. Bernstein,* 645 So.2d 530, 532 (Fla.Dist.Ct.App.1994) and *Moretti v. Lowe,* 592 A.2d 855, 858 (R.I.1991). This latter option remains available to defendant in the instant case, and the court will not protect the institutions from a properly-drafted interrogatory that abides by the parameters set forth in this Order.[4]

In sum, the peer review statutes do not leave plaintiffs or defendants without recourse. To the extent that they do, the Georgia Assembly has determined that that price is worth the benefit of encouraging candor and criticism by organizations best able to police themselves. The court will enforce that intent.

## B. Motion to Amend

Plaintiff seeks to amend his complaint to assert a claim for invasion of privacy based upon the "disclosure" by defendant of documents in papers filed with this court, which documents contain highly sensitive, personal information about plaintiff. Based upon the nature of the material, the court agreed to seal this case to protect the record from public scrutiny. However, plaintiff maintains that his right to privacy was impaired during the time between defendant's filing of the documents and the court's sealing of the records (a period less than two months), because, upon filing, the documents were made available to the public for inspection.

Under Fed.R.Civ.P. 15(a), leave to amend a complaint "shall be freely given when justice so requires." In light of Rule 15(a)'s policy of "liberally permitting amendments to facilitate determination of claims on the merits," the Eleventh Circuit has instructed that a district court should grant leave to amend "unless a substantial reason exists" to deny it. *Shipner v. Eastern Air Lines, Inc.,* 868 F.2d 401, 406 (11th Cir.1989). When determining whether to grant leave to amend, the court should consider such factors as "undue delay, bad faith or dilatory

---

inquiry, or documents produced or acquired at the direction of the committee.

4. The interrogatories (or other discovery device) cannot attempt to determine who may have attended or given testimony at any meetings where plaintiff's situation was discussed.

motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

■ Though the court is mindful of the liberal nature of Fed.R.Civ.P. 15(a), the court simply cannot allow plaintiff to amend his complaint to assert this claim. As this court recently noted, "a district court may find that amendment would be futile if the claim's defeat on summary judgment is inevitable." *Nelson v. Doe*, 159 F.R.D. 583, 585 (N.D.Ga. 1995) (Freeman, J.). In the instant case, the court does not believe this asserted claim could even survive a motion to dismiss. This is because, even assuming plaintiff states the technical requirements of a claim for an invasion of privacy,

> Georgia's appellate courts have recognized the need for pragmatism in deciding the extent to which the right of privacy should be protected.... The right of privacy is not absolute, but is *qualified by the rights of others*. No individual can live in an ivory tower and at the same time participate in society and expect complete non-interference from other members of the public.... There are some shocks, inconveniences and annoyances which members of society in the nature of things must absorb without redress.

*Cox Communications, Inc. v. Lowe*, 173 Ga. App. 812, 328 S.E.2d 384, 385 (1985) (ellipses in original) (emphasis added) (internal quotation marks and citations omitted). Though the documents may have been technically available to the public for less than two months, the court has an exceedingly difficult time viewing the filing of these documents as a "disclosure," and an even more difficult time viewing this "disclosure," without more, as the kind of disclosure the law seeks to remedy. Second, even though there is no requirement that the public actually receive the information, there is still no evidence whatsoever that any unauthorized person

viewed the documents—a factor the court ought to consider in the interest of "pragmatic" application of the law. *Id.* Third, defendant had a good faith, legitimate motive for filing the documents, and the court believes that this objective necessarily outweighs the minimal harm, if any, done to plaintiff. Finally, plaintiff himself concedes that he had considered abandoning this request and moving on to other issues in the case. Taken together, the court believes this "disclosure" falls into the category of those other "shocks, inconveniences and annoyances that society must absorb without the right of redress." *Id.* Plaintiff's motion is therefore denied.

## C. Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for partial summary judgment on the counterclaim and affirmative defenses raised by defendant as they relate to the alleged misrepresentation in plaintiff's insurance application. Plaintiff shows the court that defendant has produced no admissible evidence involving its allegations that plaintiff prevaricated when he stated on his application that he had taken no drugs during the five years prior to the date of his application. Defendant, however, argues that the evidence presented in support of its motion to compel (the medical records released to defendant from his treating psychiatrists)[5] contain admissible material from which a jury could infer that plaintiff lied on his application. At a minimum, defendant argues that plaintiff's motion should be denied without prejudice so that discovery can continue regarding acquire information available from original sources.

The court need not, at this time, rule upon the admissibility of the records attached to defendant's motion to compel because the court finds that discovery should continue. Even though the court has determined that the subpoenas, as drafted, must be quashed, it does not follow that discovery cannot be had *from the original sources* themselves. The court is mindful that defendant has protested that it cannot determine who those

---

5. These records, upon their disclosure, also prompted plaintiff's motion to amend, which the court has denied.

original sources *are* without first ascertaining their identities from the institutions subpoenaed. As noted *supra*, however, defendant has options (interrogatories to the institutions in particular) at its disposal which can identify potential original sources. Because the court believes that defendant ought to be given another chance to discover admissible evidence from competent sources, as best it can, the court finds it imprudent to grant the motion for partial summary judgment at this time. *See WSB–TV v. Lee*, 842 F.2d 1266, 1269 (11th Cir.1988).

*Conclusion*

Accordingly, plaintiff's motion to quash [# 40–1] is GRANTED. Non-party Macon Northside Hospital's motion to quash [# 41–1] is GRANTED. Plaintiff's motion to amend [# 32–1] is DENIED. Plaintiff's motion for partial summary judgment [# 30–1] is DENIED WITHOUT PREJUDICE. Discovery in this action is RE–OPENED and shall close 45 days from the filing of this Order. Within 20 days thereafter either party may file a motion for summary judgment. If no motion is filed, the parties shall file their consolidated pretrial order 30 days from the close of the reopened discovery period. If either or both parties do file for summary judgment, the time for filing the consolidated pretrial order shall be extended until 30 days after the court rules on the motion(s) for summary judgment. The Clerk is DIRECTED to RESUBMIT this action 31 days from the filing of this Order if no motion for summary judgment or consolidated pretrial order has been filed.

SO ORDERED.