686 So.2d 606 (1996)
CENTURY MEDICAL CENTERS, INC., Petitioner,
v.
Angel B. MARIN, M.D., Respondent.
No. 95-1097.
District Court of Appeal of Florida, Third District.
October 9, 1996.
Rehearing Denied February 5, 1997.
*607 Patino & Associates, P.A. and Hicks, Anderson & Blum, P.A. and Alyssa Campbell, Miami, for petitioner.
Charles B. Patrick, P.A. and Charles Patrick, Miami, for respondent.
Before JORGENSON,[*] COPE and GREEN, JJ.
COPE, Judge.
Century Medical Centers, Inc. petitions for a writ of certiorari, seeking review of an order compelling discovery. Century contends that the order infringes the peer review privilege created by subsection 766.101(5), Florida Statutes (1993). We deny certiorari, with the proviso that petitioner Century Medical Centers, Inc. need not disclose any matters which would reveal the deliberations of the peer review committee.
The plaintiff, Dr. Angel Marin, sued Century for breach of an employment contract to provide medical services. In its affirmative defenses, Century stated:
5. As a second affirmative defense, Defendant, CENTURY, states that Plaintiff, ANGEL B. MARIN, was terminated "with cause,["] in accordance with the terms and conditions of the employment contract attached to Plaintiff's Amended Complaint, and therefore this Defendant is not liable.
6. As a third affirmative defense, this Defendant states that the Plaintiff breached the duty attributable to him under the contract, and therefore Defendant, CENTURY, was justified in terminating Plaintiff from employment under the contract; where Plaintiff failed to materially carry out the terms and conditions of the contract attached to Plaintiff's Complaint and exhibits thereto, and therefore Defendant is not liable.
....
11. As a further affirmative defense, this Defendant states that the Plaintiff, ANGEL B. MARIN, M.D., was terminated based upon actions of Defendant's quality assurance medical review committee (peer review), and no cause of action for damages may arise against the Defendant; pursuant to Florida Statute § 766.101, CENTURY MEDICAL CENTERS, INC., and members of its peer review committee are immune from liability or money damages for any acts or proceedings undertaken or performed within the scope of the function of the committee, and the Plaintiff's claims are barred and/or this Defendant is not liable to Plaintiff.
By these affirmative defenses, Century asserted two distinct things. First, Century contended in paragraphs five and six that the doctor had breached material terms of the employment contract. Second, Century also claimed that it discharged Dr. Marin in response to an action taken by the peer review committee. By this Century evidently means that the peer review committee revoked Dr. Marin's credentials, or recommended that he be discharged. Thus Century staked out two distinct lines of defense: (1) that Dr. Marin materially breached the employment contract, and (2) (alternatively) that the peer review committee took action against Dr. Marin.
The trial court ordered Century to answer the following interrogatories propounded by Dr. Marin:
2. Please state the factual basis for paragraph # 5 of your Answer wherein you state that the Plaintiff, ANGEL B. MARIN, M.D., was terminated with cause in accordance with the terms and conditions of the employment contract.

*608 (a) Please give the names and addresses of any witnesses you are aware of who can substantiate said facts.
(b) If there is any documentation to support that affirmative defense presently in your custody, please give the name and address of the person who has custody of the document.
3. Please state the factual basis for the affirmative defense raised in paragraph # 6 of your Answer that states that the Plaintiff breached the duty attributable to him under the contract and that he failed to materially carry out the terms and conditions of the contract.
(a) Please give the names and addresses of any witnesses you are aware of who can substantiate said facts.
(b) If there is any documentation to support that affirmative defense presently in your custody, please give the name and address of the person who has custody of the document.
Century objected that these interrogatories infringe the peer review privilege, but the trial court overruled the objection.
We conclude that the interrogatories are perfectly proper. See Mount Sinai Medical Center of Greater Miami, Inc. v. Bernstein, 645 So.2d 530, 532 (Fla. 3d DCA 1994). They are directed to Century's claims that Dr. Marin breached the employment contract. Obviously if Century intends to try to prove at trial that Dr. Marin breached the employment contract, Dr. Marin is entitled to full discovery on that point. If Century referred the matters constituting the alleged breach of contract to the peer review committee for consideration, that does not create any blanket exemption for Century from discovery. Century must answer the interrogatories, but has a privilege not to disclose the deliberations of the peer review committee. Cruger v. Love, 599 So.2d 111 (Fla.1992).[1]
Century objects to the portion of the trial court order compelling Century to produce the following documents:
A copy of any and all written or verbal complaints or grievances filed with Century Medical Centers, Inc., at any time against Angel B. Marin, M.D., by any patient or subscriber or other person prior to April 13, 1993.
The trial court order compelling production is correct. If a patient complained to Century about Dr. Marin, the record of that complaint must be produced. If Century referred the complaint to the peer review committee for consideration, the fact of the referral, and the deliberations of the committee, need not be disclosed. However, the fact that a patient complaint is referred to the peer review committee does not render the patient complaint immune from discovery. The complaint is discoverable; the deliberations of the peer review committee are not.[2]
In the present lawsuit, Dr. Marin is preparing to defend against Century's claim that he materially breached his contract to provide medical services. In order to prepare his defense, one of the things Dr. Marin wants to know is whether any patients complained about him to Century. If anyone complained about Dr. Marin, Dr. Marin wants the opportunity to investigate those complaints nowand not hear about them for the first time at trial. Similarly, if Century's discovery response is that no one complained about Dr. Marin, that is information which the jury may be entitled to hear at trial.
The discovery request must be evaluated in the context of the facts of this case. In Dr. Marin's sworn answers to interrogatories, Dr. Marin claims that he was discharged from Century as a cost cutting measure. In answering Century's interrogatories, Dr. Marin said:
They terminated my contract before completion without just cause and asked me to *609 sign a letter requesting review of their decision which was backdated before the date of termination. A representative of Century also contacted me by phone after the termination asking if I would do surgery for them for less money than my contract.
Dr. Marin says, in other words, that the claims of substandard performance and peer review problems are all a charade. According to Dr. Marin, the best evidence that Century regards him as a qualified physician is that after discharging him, Century attempted to hire him backprovided that he would accept lower compensation. Against that defense, it is particularly pertinent, at least for discovery purposes, for Dr. Marin to find out if there were patients who complained about him.
Century relies on the Fourth District decision in Palm Beach Gardens Community Hospital, Inc., v. O'Brien, 651 So.2d 783 (Fla. 4th DCA 1995). In that case plaintiffs sued the defendant hospital and defendant physicians for the death of their child while in the hospital's care. Plaintiffs sought a list of prior incidents at the hospital involving the same physicians. From the wording of the opinion, it appears that the responsive information was to be found only in the files of the peer review committee, which files were not discoverable. In the present case, by contrast, this discovery request is directed to Century, not its peer review committee. Patient complaints directed to Century fall within the scope of permissible discovery under the circumstances of this case.
Century objects that the court directed it to answer the following interrogatory:
Please give the name and address of the person who was employed by Century Medical Centers, Inc. at or about the time of the termination of Dr. Marin's contract and who was most knowledgeable about the circumstances surrounding the termination.
This interrogatory is proper. Century must designate the corporate representative or representatives with most knowledge regarding the termination. If at deposition Century believes that the peer review privilege is being invaded, an appropriate objection can be made at that time.
Century objects that the trial court ordered it to answer the following interrogatory:
Please give the names and addresses of any other physicians who were under contract with Century Medical Centers, Inc., and whose contracts were terminated for any reason for the six (6) month period before April 13, 1993 and for the six (6) month period after April 13, 1993.
Century argues that the interrogatory requests irrelevant information. We disagree. The interrogatory "appears reasonably calculated to lead to the discovery of admissible evidence." Fla. R. Civ. P. 1.280(b)(1).
Century also contends that a response to this interrogatory would unduly infringe other physicians' privacy interests. On the contrary, the fact that a physician becomes affiliated with a particular health maintenance organization, or ceases affiliation with a particular health maintenance organization, is hardly confidential information. To the contrary, this is the type of information which would be widely disseminated to patients and staff.
Century relies on American Health Plan, Inc. v. Kostner, 367 So.2d 276 (Fla. 3d DCA 1979). That case is distinguishable. The interrogatories in that case required American Health Plan to disclose "the names of the subscribers to petitioner's health plan whose contracts for health services were terminated by petitioner for misrepresentation or omissions of medical information made in their applications...." Id. at 276-77. This court quashed the order compelling discovery because (1) the discovery would unduly infringe patient privacy rights; (2) the information sought was not relevant nor reasonably calculated to lead to the discovery of admissible evidence; and (3) the interrogatories were unduly burdensome because they would require the review of more than three thousand files in order to find the requested information. Id. at 277. No comparable interests are involved in the present case.[3]
*610 Century complains about a portion of the trial court order compelling Century to provide certain information regarding Medicare or Medicaid billings which used Dr. Marin's provider number. The record reveals that Century answered the interrogatory, thus mooting the issue.
In sum, there was no departure from the essential requirements of law in the compelling of the above discovery. We deny certiorari with the caveat, as explained above, that the deliberations of the peer review committee are not to be revealed.
JORGENSON, J., concurs.
GREEN, Judge, concurring in part and dissenting in part.
I am in substantial agreement with the bulk of the majority opinion. I must respectfully dissent, however, from the majority's holding that Century's records of patient complaints about Dr. Marin are discoverable.
The issue presented to us, whether a defendant health care provider who raises certain affirmative defenses may preclude any discovery[4] of the factual basis for such defenses pursuant to subsection 766.101(5), appears to be one of first impression. Because I agree with Dr. Marin that the privilege was not intended to be used as a "sword and a shield," I would modify the order. To the extent that Century (or its employees) are the original sources of independent information which forms the basis of the affirmative defenses, I believe Century must turn over such information. To the extent that Century (or its employees) are not the original sources, Century must identify the outside sources of the information which form the basis of its affirmative defenses in this action by name and address. Some of these sources may happen to be peer review committee members, peer review witnesses, or non-peer review records ultimately submitted to the peer review committee. The fact of such membership, testimony, or submission should not be disclosed to the respondent. Subsection 766.101(5) states:
The investigations, proceedings, and records of a committee as described in the preceding subsections shall not be subject to discovery or introduction into evidence in any civil or administrative action against a provider of professional health services arising out of the matters which are the subject of evaluation and review by such committee, and no person who was in attendance at a meeting of such committee shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such committee or as to any findings, recommendations, evaluations, opinions, or other actions of such committee or any members thereof. However, information, documents, or records otherwise available from original sources are not to be construed as immune from discovery or use in any such civil action merely because they were presented during proceedings of such committee, nor should any person who testifies before such committee be prevented from testifying as to matters within his knowledge, but the said witness cannot be asked about his testimony before such a committee or opinions formed by him as a result of said committee hearings.
The legislative intent behind the creation of the privilege was to set up a physician review process free from threats of defamation or other civil actions against those involved in the review process. In Holly v. Auld, 450 So.2d 217 (Fla.1984), the Florida Supreme Court, in reviewing section 768.40 (renumbered 766.101 in 1988), stated:
In an effort to control the escalating cost of health care in the state, the legislature deemed it wise to encourage a degree of self-regulation by the medical profession through peer review and evaluation. The legislature also recognized that meaningful peer review would not be possible without a limited guarantee of confidentiality for the information and opinions elicited from *611 physicians regarding the competence of their colleagues.
Holly, 450 So.2d at 219-20 (footnote omitted). The statute has shielded from discovery, for examples, a doctor's application for staff privileges, Cruger v. Love, 599 So.2d 111 (Fla.1992); a hospital's responses to accreditation surveys, Variety Children's Hosp. v. Mishler, 670 So.2d 184 (Fla. 3d DCA 1996); prior incidents involving the same doctors, Palm Beach Gardens Community Hosp., Inc. v. O'Brien, 651 So.2d 783 (Fla. 4th DCA 1995); names and addresses of the members of the peer review committee, All Children's Hosp., Inc. v. Davis, 590 So.2d 546 (Fla. 2d DCA 1991); and proceedings and records from medical review committee meetings, Parkway Gen. Hosp., Inc. v. Allinson, 453 So.2d 123 (Fla. 3d DCA 1984).
The Supreme Court of Florida has interpreted the statute extremely broadly. In Cruger, the court stated: "We hold that the privilege provided by sections 766.101(5) and 395.011(9), Florida Statutes, protects any document considered by the committee or board as part of its decision-making process." 599 So.2d at 114 (emphasis added). The court went on to state that "[t]he policy of encouraging full candor in peer review proceedings is advanced only if all documents considered by the committee or board during the peer review or credentialing process are protected." Id. (emphasis added); see also Mishler, 670 So.2d at 186.
Century herein relies on the broad language of Cruger to argue that everything related to Dr. Marin's termination, even the name(s) of the person(s) with the most knowledge of the facts of its affirmative defenses, are privileged and immune from discovery because a peer review committee evaluated the information. Further, Century treats the entire HMO as if it were inextricably intertwined with the peer review committee and argues that the name of any person or document in the HMO's possession which have been made part of a peer review process are absolutely immune from discovery. Thus, for example, under Century's formulation, a plaintiff suing for malpractice could not even obtain her own hospital records from Century if those records had been made part of a peer review process. Indeed, under this scenario, all health care providers could shield themselves from all liability by simply submitting all patient records to a "quality assurance review." And, as is obvious from this case, health care providers could never be successfully sued for wrongful termination of an employment contract if all employee personnel records were submitted to a quality assurance review. I agree with the majority that neither the statute itself, nor the language of Cruger, contemplates or requires such an outrageous result. Accord Amente v. Newman, 653 So.2d 1030, 1032 (Fla.1995)(stating where possible, the courts should avoid a statutory interpretation which leads to an absurd result).
The final sentence of the statute permits the discovery of information, documents or records otherwise available from original sources, and people who testified before the committee may testify as to matters within their personal knowledge, as long as the witness is not asked about testimony before the committee or opinions formed by him as the result of committee hearings. Numerous courts have construed the statute as permitting a plaintiff to obtain the privileged information from other outside sources and allowing witnesses with personal knowledge of the facts of the case to be deposed or called to testify at trial.[5]See Cruger, 599 So.2d at 115; Mishler, 670 So.2d at 186 n. 2; Parkway Gen. Hosp., 453 So.2d at 126. Thus, Dr. Marin is entitled to depose individuals as to their personal knowledge of the facts surrounding his termination and to obtain documents relating to the termination, other than from the peer review committee records. The question then arises as to how Dr. Marin is to ascertain the identities of such individuals for discovery purposes if Century refuses to give him any factual information whatsoever about its affirmative defenses.
In Mount Sinai Medical Center, this court noted that the plaintiff bringing the malpractice action had the right to pose questions by way of interrogatory and deposition to Mt. *612 Sinai about who would have firsthand knowledge of the alleged events and what documents, unrelated to the medical review process, exist which would be relevant to the claim. 645 So.2d at 532. In Cruger, the supreme court referred to additional sources of information such as medical school records and court records of other malpractice actions. 599 So.2d at 115. In the instant case, Dr. Marin posed such interrogatories to Century.
Thus, under Mount Sinai Medical Center, Century may not hide behind the statute and refuse to give Dr. Marin the name of the person most knowledgeable about Century's affirmative defenses. Century must designate who that person is and the person so designated must testify as to matters within his or her own first hand knowledge. The only restriction is that the person may not testify or be asked about specific testimony or information given to the peer review committee. Century must also identify other information related to its affirmative defenses which is available from original or independent sources.
Again, I emphasize that the issue of the action taken by Century against Dr. Marin was raised by Century in its affirmative defenses and Dr. Marin's request for information was addressed solely to the factual basis of those defenses. Like the majority, I am aware that "[t]he constancy of the privilege, which is thus far absolute, does not vary with the nature of the litigation or the procedural posture of the case, and does not depend upon whether the medical review committee is a party or merely a potential source of information." Miami Heart Inst. v. Reis, 638 So.2d 530, 532 (Fla. 3d DCA 1994). I seek solely to balance the legislative intent of the statutory privilege with Dr. Marin's right to adequately defend himself against Century's affirmative defenses that Dr. Marin was terminated for cause and for failure to adhere to the terms of his employment contract. Without intruding upon the peer review process itself, Dr. Marin has the right to obtain the factual basis of Century's affirmative defenses from the original sources. Century is ostensibly the only party who can identify these original sources.
Indeed, I am curious as to how Century intends to prove its affirmative defenses at trial, if as it asserts, the factual basis of such defenses are protected by the statutory privilege. As I read the statute, Century would also be barred from introducing into evidence at any civil or administrative action any information obtained in or recommendations arising out of peer review process. § 766.101(5); Miami Heart Inst., 638 So.2d at 531-32 (prohibiting even defensive use of peer review materials). The statute declares that the investigations, proceedings and records of the peer review committee shall not be subject to introduction into evidence in any civil action against a provider of professional health services arising out of the matters which are the subject of evaluation and review by the committee. If a peer review committee decided that Dr. Marin should indeed be terminated because of alleged patient complaints or for some other quality assurance reason, then the civil action for wrongful termination of the written employment contract would be "a matter arising out of the of the committee's evaluation and review"; none of the information obtained and considered in the course of peer review may be introduced as evidence by either party. Based on the record before us, however, I am somewhat skeptical that all of the requested discovery relating to Dr. Marin's termination is privileged.[6]
Simply put, Century must disclose to Dr. Marin the information that it will lawfully rely upon to prove, as it must, its affirmative defenses at trial. It is most certainly not the case that Century will be allowed to refuse to provide any information about its affirmative defenses to Dr. Marin during discovery and then introduce the same information on its own behalf at trial.
*613 I must respectfully dissent, however, from the majority's decision to compel Century to produce a copy of all written complaints or grievances filed with Century against Dr. Marin. As the Fourth District has recently held (correctly, I think), these documents are privileged from discovery by virtue of section 766.101(5). Palm Beach Gardens Community Hosp., 651 So.2d at 784. The majority concludes that because these documents may be available elsewhere within the HMO, they are discoverable. This argument has been specifically rejected by the Supreme Court of Florida and by this court. See Cruger, 599 So.2d at 114-15 (applications for staff privileges were "considered" and therefore shielded); Mishler, 670 So.2d at 185-86 (shielding accreditation surveys of hospital as part of quality assurance process). In other words, the fact that a copy of a peer review document has been or is now physically stored elsewhere than the files of the peer review committee does not necessarily make it discoverable from the HMO.[7] The critical inquiry is the function of the document.
In Cruger, the court considered the discoverability of applications for staff privileges. Because of the need for complete candor in these applications, the court concluded that they necessarily were part of the peer review process for purposes of section 766.101(5). 599 So.2d at 114. In Mishler, this court applied the same reasoning to a hospital's accreditation report. See 670 So.2d at 185-86. Similarly, the records sought herethe hospital's own account of patient complaintsgo to the heart of the physician review process. As such, they are simply not subject to discovery from Century.
The majority adds that these patient complaints should be discoverable in the interest of fairness because they are so particularly "pertinent" to Dr. Marin's claims. While I share the majority's sympathy for Dr. Marin's potential predicament, the "pertinence" of such complaints is itself irrelevant to the applicability of the privilege. The following language from Holly v. Auld, 450 So.2d 217 (Fla.1984) is particularly worthy of repetition:
Inevitably, such a discovery privilege will impinge upon the rights of some civil litigants to discovery of information which might be helpful, or even essential, to their causes. We must assume that the legislature balanced this potential detriment against the potential for health care cost containment offered by effective self-policing by the medical community and found the latter to be of greater weight. It is precisely this sort of policy judgment which is exclusively the province of the legislature rather than the courts.
450 So.2d at 220.
I must therefore dissent from this portion of the majority opinion.
NOTES
[*] Jorgenson, J., did not hear oral argument.
[1] It should be noted that Cruger dealt with documents which were exclusively intended for review by the peer review committeei.e., credentialing information. Those are not the facts of this case.
[2] If a patient complained directly to the peer review committee, then that complaint would be exempt from disclosure. See Cruger, 599 So.2d at 115.
[3] The interrogatory does not ask Century to disclose solely those persons who were terminated for cause, nor does it ask for any specification of the reason for termination.
[4] Or, worse yet, refuse to disclose any of the requested information in discovery but attempt to introduce the same in support of the affirmative defense at trial.
[5] The statute does not protect a person or a health care provider who acts with intentional fraud even if the person or provider is involved in the medical review committee.
[6] For examples, Dr. Marin averred, under oath, that Century asked him to sign a letter, after his discharge, backdated to make it appear that he had participated in the peer review process when in fact he had not. Further, the contract lists certain activities, i.e. failure to follow proper referral protocols, which might be grounds for termination under the employment agreement but would not necessarily be an inherent part of the peer review process.
[7] It is significant that the Cruger court sent the party seeking discovery to sources completely outside the hospital, such as court records of other malpractice actions against the physician. See 599 So.2d at 115.