COHEN, J.,
concurring specially.
The trial judge in this ease was called upon to discern the motives of competing physician groups engaged in a very personal and very public dispute. The issue that was before the trial court and is, in turn, before this Court is whether statements made at two meetings were privileged under Florida’s statutory protection for peer review proceedings. The events that led’ up to those meetings and what occurred at each meeting were subject to a great deal of conflict and inconsistency. Almost one-half of the pages of the briefs submitted to this Court are devoted to explaining the facts in this litigation. The interpretations the parties give those facts differ dramatically based on their various perceptions of the events.[1]
This dispute arose during a transition in management of the trauma. program at Holmes Regional Medical Center (“HRMC”) to Health First, Inc., from the University of Florida. At or around the time of the transition, Hynes — a community physician not employed by HRMC — was president of the medical staff, and Grenev-icki was chair of the surgery department at HRMC. In his capacity as chair of the Medical Executive Committee (“MEC”) at the hospital, Hynes, along with Grenevicki and two other, nonparty physicians, issued a summary suspension of the trauma surgeons’ admitting privileges effective the following day.[2] The trauma surgeons obtained a temporary injunction halting the suspension.
Before a hearing on the injunction, the parties reached a Mediated Settlement Agreement (“MSA”), which was approved by the court. The MSA dissolved the temporary injunction and lifted the summary suspensions.[3] As part of the agreement, the full MEC was to meet by a designated date to review the circumstances that led to the summary suspensions and to determine what corrective action, if any, was appropriate under the MEC by-laws. The trauma surgeons were entitled to attend that meeting and to make a presentation to the committee. The MSA prohibited the parties from making any negative or disparaging comments about each other but also provided that:
*100 Notwithstanding anything contained herein, nothing shall restrict or prohibit any peer review activity or peer review action pursuant to the Staff By-Laws, other than summary suspension, to be taken based upon the matters asserted as the basis for the Existing Summary Suspension provided such action is in accordance with the Staff By-Laws.
Reconciling the former provision, which prohibited negative or disparaging comments, with the latter, which allowed for peer review, is the essence of this case.
The meeting of the MEC took place as specified and lasted until the early hours of the morning.[4] The parties have made much of the varied, and in some instances entirely inconsistent, statements by the MEC’s counsel at this meeting. At certain times, counsel advised members of the committee that the meeting was not a peer review proceeding; at other times, he advised the committee that it was a peer review proceeding.[5] Each side has offered these various statements to support their different positions.
Although the MSA required that the meeting be conducted in accordance with the by-laws, there were significant departures from those rules during the meeting. Foremost was that Hynes presided over the meeting despite an obvious conflict of interest, in direct contradiction of the bylaws.[6] After the trauma surgeons made a joint presentation to the committee and left the meeting,[7] both Hynes and Grenev-icki made negative and derogatory statements about the trauma surgeons. The meeting adjourned with no resolution.
Soon thereafter, HRMC scheduled a general staff meeting. There were indications that either a motion had been filed to remove Hynes as president of the MEC or that such a motion was imminent, and that the motion would be considered at the staff meeting. Having learned of this, Hynes prepared a presentation that included a timeline of events and a summary of the problems leading to his emergency suspension of the trauma surgeons. This presentation, made to general staff rather than to the MEC,[8] was also negative and disparaging in violation of the MSA. Hynes’s statements at these two meetings gave rise to numerous motions for sanctions alleging a breach of the MSA.[9] Gre-nevicki and Hynes argue that, the MSA *101 notwithstanding, they are not liable for their statements at either meeting because of immunity provided for peer review proceedings under Florida law.
Section 395.0193, Florida Statutes, provides that “[e]ach licensed facility, as a condition of licensure, shall provide for peer review of physicians who deliver health care services at the facility. Each licensed facility shall develop -written, binding procedures by which such peer review shall be conducted.” § 395.0193(2), Fla. Stat. (2008).[10] If there is a reasonable belief that a staff member or physician acted in a manner that warrants discipline, “a peer review panel shall investigate and determine whether grounds for discipline exist.” Id. § 395.0193(3). Further, section 395.0193(5) immunizes participants in peer review proceedings from liability for their statements. The section provides:
There shall be no monetary liability on the part of, and no cause of action for damages against, any licensed facility, its governing board or governing board members, peer review panel, medical staff, or disciplinary body, or its agents, investigators, witnesses, or employees; a committee of a hospital; or any other person, for any action taken without intentional fraud in carrying out the provisions of this section.
Id. § 395.0193(5). Thus, if the MEC meeting were a peer review proceeding, Hynes and Grenevicki would have immunity for any statements made, provided those statements were not made with fraudulent intent.
The trial court conducted a three-day evidentiary hearing and ruled that the MEC'meeting constituted a peer review proceeding under the MSA. As a result, the court determined that the privileges afforded under section 395.0193(5) shielded Hynes and Grenevicki from monetary liability for that meeting.[11] Therefore, the court found they were the prevailing parties on the claims stemming from the MEC meeting and awarded them attorney’s fees and. costs on those claims. However, the trial court found the general staff meeting was not a peer review proceeding and awarded fees and costs to the trauma surgeons as prevailing parties on the claims from that meeting.[12] Both sides appealed.
I first review the trial court’s ruling that the MEC meeting constituted peer review. The trauma surgeons point to a number of factors that cut against, finding that the meeting of the MEC constituted peer review. First is the statement of MEC’s counsel declaring that the meeting was not a peer review proceeding. Additionally, the meeting did . not comply with the bylaws in at least two significant respects: (1) Hynes chaired the meeting despite being precluded under the by-laws from leading a peer review meeting as the party who made the initial complaint; and (2) there were individuals present at the meeting who were not on the MEC. Hynes and Grenevicki counter that the agreement *102 would be meaningless if the two doctors who initiated the summary suspension were not allowed to participate, and that reading the agreement to preclude their participation is contrary to the corrective action language in the. MSA as well as the policy underlying peer review. ,
Notably, the trauma surgeons do not argue that the failure to comply with the by-laws, in and of itself, precludes the MEC meeting from being considered a protected peer" review proceeding. See Awwad v. Largo Med. Ctr., Inc., No. 8:11-CV-1638-T-24-TBM, 2011 WL 5006503 at *2-3, *6-7 (M.D.Fla. Oct. 20, 2011) (holding that failing to comply with hospital bylaws in connection with peer review proceeding did not vitiate peer review immunity). Rather, they argue the failure to comply with the by-laws is evidence of its status as something other than peer review — a contractually mandated meeting.
However, the' committee’s violation of the by-laws was only one of many factors the trial judge considered in finding that the MEC meeting qualified as peer review. While Hynes’s service as chair and his direction of the meeting are troubling, I cannot say that the trial court erred in its finding, and I 'concur with the panel in affirming this decision. The MSA specifically contemplated a meeting of the MEC, and the committee was free to pursue a course leading to corrective action. This is the very purpose of peer review, and it is illogical to maintain that the prohibition against negative or disparaging remarks was intended to encompass the peer review process.
I agree, as well, with the panel’s decision affirming the trial court’s finding that the general staff meeting did not constitute peer review. Despite having agreed under the contract not to disparage the trauma surgeons, Hynes did precisely that in a meeting that was open to the general staff. He is appropriately sanctioned for his violation of the agreement.
Both findings are fact dependent. The trial court heard three days of testimony and considered the evidence presented. There was competent, substantial evidence to support the factual determinations of the trial court. I find no error in the court’s legal determination of the nature of each meeting based upon those findings of fact.

.For simplicity, Drs. Figueroa, Pellegrino, Turk, and Johnson will be referred to as the “trauma surgeons,” Dr. Hynes as "Hynes,” and Dr, Grenevicki as "Grenevicki.”

. One of the other doctors who signed off on the summary suspension was then appointed director of the HRMC trauma program.

. The trial court reserved jurisdiction to enforce the terms and conditions of the MSA.

. The issue of the summary suspensions was not the only item on the agenda for the MEC meeting.

. It appears counsel was in a difficult position. He was the lawyer for the MEC, which was headed by Hynes, a forceful administrator. However, there were a number of members of the committee who were openly skeptical of the summary suspensions and who challenged Hynes’s running of the meeting arguing that, as initiator of the suspensions, he had a clear conflict of interest. In addition, counsel was trying to ensure that the committee complied with the terms of the MSA. These competing interests led to inconsistent advice during the course of the meeting despite counsel’s best efforts.

. This was due in part to counsel’s advice that there was no conflict of interest.

. The fact that the trauma surgeons were allowed to attend as a group, while not a violation of the by-laws, was very unusual. The parties argue this as a factor in determining whether the meeting was intended as peer review.

. While there were some individuals present at the earlier MEC meeting who were not members of the MEC, there is no dispute that a large number of staff members present for the second meeting were not on the MEC.

. Grenevicki did not make any allegedly actionable statements at that meeting. Hynes acknowledges that the MSA’s no-disparagement provision applied to the general staff meeting.

.Peer review is "the process by which physicians and hospitals evaluate and discipline staff doctors.” Bryan v. James E. Holmes Reg’l Med. Ctr., 33 F.3d 1318, 1321 (11th Cir.1994); see also Cruger v. Love, 599 So.2d 111, 114-15 (Fla.1992) ("The privilege afforded to peer review committees is intended to prohibit the chilling effect of the potential public disclosure of statements made to or information prepared for and used by the committee in carrying out its peer review function.").

. The trial court found no intentional fraud.

. Grenevicki was awarded a specific amount of damages, but no amount was ordered on behalf of either Hynes or the trauma surgeons. It is unclear whether the trial court believed Hynes's and the trauma surgeon’s costs offset each other.